CITY OF EVANSVILLE, IND., et al. v. GASETERIA, Inc.

No. 4437.

Circuit Court of Appeals, Seventh Circuit.

June 29, 1931.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellee brought its equity action to enjoin appellant city and its officers from interfering with appellee's installation in the city of a gasoline filling station having bulk and service tanks of a total of some 51,000 gallons capacity. Upon final hearing, the court granted the relief prayed, and the appeal is from the decree.

Federal jurisdiction is invoked upon the allegation that through the acts complained of appellee was and would be deprived of its property without just compensation, in violation of the Fifth Amendment, and be denied the equal protection of the laws, contrary to the Fourteenth Amendment of the Federal Constitution.

In November, 1929, appellee, desirous of installing such a station in Evansville, applied to the Indiana state fire marshal for requisite permit therefor. The marshal granted the permit, which recites that the filling and service station is to be located at the corner of John and Heidelbach streets and on the Illinois Central railroad land, and to consist of three tanks aggregating 47,000 gallons capacity and two tanks each of 2,000 gallons capacity, and attached a blue print of the plans.

This blue print and the marshal's permit, together with application for permit from the city to erect the necessary buildings, were presented by appellee to one Voss, then Evansville's building commissioner. Voss at first refused to grant the permit unless, as he said, appellee would agree in writing not to cut the price of gasoline in the city. With this proposition appellee refused to comply, and Voss indorsed on the application the following:

"The undersigned in the past has denied the Hoosier Petroleum Co. and others a building permit for the reason that they were retailing gasoline in other cities at a cut price and the undersigned does not want to be instrumental in starting in substance a gasoline war in Evansville and denies this permit for the same reason.

"Signed by

"John Voss

"Building Comm., City of Evansville.

"P. S. I acknowledge that the permit fee of $4.00 has been offered and tendered but was refused by me.

"[Signed] John Voss."

Frank C. Dailey, Percy E. O'Neal, George S. Dailey, and Robert A. Efroymson, all of Indianapolis, Ind., for appellants.

Myron H. Gray, of Muncie, Ind., and William H. Thompson, Albert L. Rabb, and Thomas D. Stevenson, all of Indianapolis, Ind., for appellee.

It appears that Voss had written the fire marshal under date of November 1, 1929, urging him to assist him in keeping out such price cutters.[1]

There was evidently a renewal of the application for the permit, and it was granted on November 21, 1929, with the following indorsement thereon:

"Permit considered, approved and ordered by City Attorney, Henry Hardin, and also approved by Mr. Blanchard of City Plan Commission from the standpoint of Zoning and quantity of gasoline storage.

"[Signed]   John Voss"

Thereupon appellee completed or let contracts for buying land and equipment; buildings upon the site were torn down, pipes were laid, tanks and other equipment were brought to the property, and the work was in progress and some equipment installed when, on February 12, 1930, appellee was notified to discontinue excavation in an adjacent alley, and, on disobedience of the notice, appellee's president, Williams, and agents were arrested, and the work was stopped.

It appears that appellee was not then excavating in the alley, but had laid pipe across it, and excavation for the building and underground tanks was in progress within six inches of the alley. The board then based its complaint on the assertion that appellee had no right to cross the alley with pipe which was designed to carry gasoline from the storage tanks being located on the railroad property to the filling station proper on the opposite side of the alley.

On December 17, 1929, after the procurement of the site and letting of contracts by appellee, the city council passed an ordinance called "gasoline amendment," amending the Building Code and declaring it unlawful, within the city limits, to install, above or below ground, storage tanks of combined capacity exceeding 3,000 gallons at one location. The City Code had previously provided that such installations should be in accordance with the rules and regulations of the state fire marshal. These regulations provided that no filling station should be installed at any place within a city's fire limits or fire zone, which had tanks of maximum capacity of over 6,600 gallons, and that bulk storage should not exceed 8,800 gallons. The rules also provided for making exceptions thereto on written request whenever the fire marshal deems that life and property will not thereby be endangered.

Section 2 of the new ordinance provided that it was to be in force fifteen days after its publication. The publication claimed was by posting on the Federal building in Evansville December 24, 1929. Appellee contends that it never heard of the ordinance until February 5, 1930.

Under date of February 13, 1930, there was sent from the fire marshal's office to the Board of Works a letter which stated that if appellee's bulk storage and filling station was within the fire limits of the city of Evansville it had no approval from his department, as the approval was procured by Mr. Williams, with definite understanding that his bulk storage station of over 8,800 gallons capacity was located outside of the fire limits of Evansville.

Under date of February 18, the fire marshal again addressed a letter to the board of works and to Williams wherein, after purporting to recite the facts, the fire marshal concluded that there was nothing hazardous to life and property in the erection, operation, and conduct of the station, and that he approved its erection upon the terms of the original permit, and for purpose of clarifying the particular case modified the rule.

Under date of February 20, the state fire marshal, in a more formal instrument,[2] ad-

---

[1] "Department of Buildings
"John Voss, Building Commissioner
"Evansville, Indiana, November 1, 1929.
"State Fire Marshal, Indianapolis, Ind.
"Dear Sir: Several times in the past different parties have attempted to locate a retail gas filling station near a Railroad Switch for the purpose of retailing gasoline at cut prices and so far this office has been able to keep them out and we would like to continue to do so, because if one cut price concern gets started all the others will have to follow and the result is a complete demoralization of the business, as well as throwing a lot of men out of work and I would like before you ok any proposition of this kind to let me know, before giving your final decision and I will be obliged if you will help me out in this matter.
"Yours truly,
"[Signed] John Voss
"Commissioner of Buildings."

[2] To Gaseteria, Inc., Indianapolis, Ind.
The Mayor, Board of Works, Zoning Board, City Building Commissioner, and City Council of Evansville, Ind.
In re: Installation and operation of combination bulk and public filling station at the corner of John and Heidelback Streets on the Illinois Central Railroad in the City of Evansville, Indiana.
A permit having been issued by the State Fire Marshal Department on the 18th day of November, 1929, and by the Building Commissioner of the City of Evansville, Indiana, on the 21st day of November, 1929, to Gaseteria, Inc., of Indianapolis, Indiana, for the installation, erection and operation of a combined bulk and public filling station at the corner of John and Heidelback streets on the Illinois Central Railroad in the said City of Evansville, Indiana;
The said Gaseteria, Inc., having proceeded to expend money for work, real estate, supplies and

dressed to the mayor, the board of works, the zoning board, the building commissioner, the city council of the city, and to appellee, purported to recite the facts of the case, and made the order ratifying the original permit of November 18, 1929, and waiving the rules and regulations to the extent that the original permit may have been in conflict therewith.

Respecting the representation to the marshal that the station was not in the fire limits, Williams testified that the location was far from the business part of the city, and so remote from buildings that he honestly assumed it was not within the fire limits.

It appears that on January 8, 1930, there was a change of administration in the city; a new mayor and others, including a successor to Voss as building commissioner. However, resistance to this installation appeared to have continued, and there are some

equipment in the installation and erection of said station, all in good faith and to the amount of approximately twenty two thousand dollars ($22,000.-00); and

A controversy having arisen as to the legality of the said permit granted by the State Fire Marshal Department; and

.The State Fire Marshal having made investigation of all the facts in the matter does now and hereby render his decision as follows:

1. That there is nothing dangerous or hazardous to life or property in the installation and operation of this station at said location, at least no more dangerous or hazardous than is any other bulk or filling station at any other place in the state.

2. That all measurements are to be taken from pumps and center of tanks and not the buildings connected with such station.

3. That for the purpose of clarifying this particular case and rendering justice therein, so far as this said station is concerned the rules of the State Fire Marshal Department prohibiting the erection and operation of bulk storage stations within the fire zone of any city in the state are hereby waived; but this waiver is for only this particular case and not general in its application.

4. That the store building on the corner and about 110 feet from said station is not an apartment house.

5. That the unused alley across which the pipes of the Gaseteria, Inc., go is not a public passage way so far as this Department is concerned and the burial of said pipes across this alley to the depth of twenty-four inches is satisfactory to this Department and has the approval of this Department.

6. That the permit granted to the Gaseteria, Inc., by the State Fire Marshal Department on the 18th of November, 1929, was legal and is so now; that said Gaseteria, Inc., should be permitted to proceed with its work on this station, complete it and operate it.

7. That in order to get this matter straightened out and render substantial justice, the State Fire Marshal does for this case only now and hereby waive all the rules and regulations of the Department that could or might in any way be construed as prohibiting the completion of this station and its operation according to the blue print filed; but such waiver is not general in application to other cases which might arise.

· Witness my hand and official seal this 20th day of February, 1930.

[Signed] Alfred Hogston,
State Fire Marshal
[Seal.]
State Fire Marshal Indiana.

facts tending to indicate that it was inspired or supported by one or more persons interested in other filling stations.

But under date of February 25, the then building commissioner revoked appellee's permit of November 21, 1929, in so far as it permits installation of tanks for storage of petroleum products, except as to two 4,000-gallon tanks for storage of motor oil and two 2,000-gallon tanks for gasoline and one 500-gallon tank for kerosene, and one 500-gallon tank for alcohol, such revocation purporting on its face to be predicated solely upon subsection 38 of section 6 of an ordinance of the city adopted August 17, 1925, known as the "zone ordinance," which provides that in the district there defined buildings and premises may be used for any purpose except the following: "38. Petroleum Products, Refining or Wholesale Storage of Petroleum."

The notice of revocation specified "wholesale storage of petroleum" as the particular part of the ordinance which appellee's permit transgressed.

It thus appears that the prior pretexts upon which the carrying on of this work was resisted and stopped, after the permit had been granted, viz., misrepresentation to the fire marshal as to location outside of the fire limits, the contention of excavation of alley, which culminated in stopping the work and the arrest of Williams and others of appellee's employees and the claim that appellee had unlawfully crossed the alley with pipes, were all abandoned by the city, and the revocation was predicated wholly upon appellee's alleged transgression of the above-indicated provision of the zone ordinance.

Appellee properly maintains that appellants are precluded from now asserting grounds for revocation of the permit, other than those asserted in the revocation itself. Ohio & M. Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; McCreary v. Strongman et al., 6 F.(2d) 441 (C. C. A. 3); Second Nat. Bank of Allegheny v. Lash Corporation, 299 F. 371 (C. C. A. 3).

The situation then was this: The city authorities, with definite knowledge of the location and of the plans for this work, granted the permit for it with the recited concurrence of a representative of the zone board. On the faith of the permit appellee exercised options for the purchase of land, and leased other land and rights to lay pipes, and entered into contracts for constructing the buildings and installing and equipping the plant. Building was then under construction, the

tanks had been purchased and were partly installed, some of them were on railroad cars awaiting unloading at the site, and the work was progressing, and about $20,000 had been expended when the work was interrupted by the city.

■ There is much discussion in the briefs respecting the power of the state fire marshal to make exceptions to his rules. We do not deem it necessary to give much consideration to this proposition beyond referring to Gorieb v. Fox, 274 U. S. 603, at page 607, 47 S. Ct. 675, 676, 71 L. Ed. 1228, 53 A. L. R. 1210, where it is said, concerning a regulation by a city council: "In laying down a general rule, such as the one with which we are here concerned, the practical impossibility of anticipating in advance and providing in specific terms for every exceptional case which may arise, is apparent. And yet the inclusion of such cases may well result in great and needless hardship, entirely disproportionate to the good which will result from a literal enforcement of the general rule. Hence the wisdom and necessity here of reserving the authority to determine whether, in specific cases of need, exceptions may be made without subverting the general purposes of the ordinance."

The statute of Indiana (Acts 1913, p. 556, c. 192; sections 11761–11780, Burns' 1926; sections 11762–11778, Burns' Supplement 1929), creating the office of fire marshal, conferred upon the marshal broad functions and authority, which upon their face are sufficiently inclusive to authorize him, in his good judgment, to adopt rules, and in particular cases to make reasonable exceptions thereto.

■ It would seem that the city, when granting the permit, recognized this as having been a proper case for exceptional treatment, both as to fire limits and zone; for while the fire marshal may not have known just where Evansville's fire limits were, it would be drawing quite too heavily upon the imagination to assume that the building commissioner who granted the permit, and the zone officer who concurred in it, not to mention the city attorney, did not have definite knowledge of these lines. Such knowledge was manifestly a fundamentally requisite qualification for proper exercise of their official duties. We are therefore justified in saying that their approval of the permit was, so far as they were concerned, a recognition of its propriety, the fire limits and zone ordinance to the contrary notwithstanding; and when, shortly thereafter, the fire marshal found this to be a proper case for a waiver of his rules respecting the granting of permits within the fire limits, or respecting the zone ordinance, the city officials, whether of the old or new administration, were in no position to maintain that the fire marshal had no right to make the waiver; in fact the city attorney, upon receipt of a copy of the letter from the fire marshal, wherein he waived his rules, advised the building commissioner that that action by the fire marshal permitted of no prohibition against the proposed construction.

It is not seriously contended that there is anything unreasonable or improper or unjust in the fire marshal's waiver, so far as concerns the facts upon which he assumed to make it. This installation was not within prohibited proximity to any buildings or institutions as specified in any ordinance. It was on the edge of the fire limits, with no substantial buildings within a hundred feet of it. It was alongside the Illinois Central Railroad, so located that the oil could be passed from the tank cars into the buried storage tanks adjacent to the tracks, and from these tanks by pipes into the buried service tanks of the station, avoiding any further transportation. The tanks were all to be under ground, thereby eliminating considerable of the danger which would otherwise be involved, and the storage tanks were not to be employed for the filling of tank wagons and the general sale of gasoline.

It is quite evident that this location of the station in proximity to the railroad afforded advantages which might enable the station either to make a larger profit or to make reduction in selling price, and it was just this situation which Voss openly proclaimed he was resisting by refusing to grant permits for stations located in such relation to railroads. However honest his views may have been, he of course had no lawful right to make such discrimination. But it may be fairly gathered from the circumstances here appearing that it was this spirit and purpose which actuated the opposition to this installation.

To obviate such conclusions, it is pointed out that the revocation did not undertake to revoke the permit to the extent of the two 2,000-gallon tanks for the gasoline. But the special advantage of the location, as pointed out, would be minimized, if not wholly neutralized, if in connection with the service tanks there were not bulk tanks into which the contents of cars might be run; for if adequate storage capacity were not immediately

available, further handling of the oil was quite inevitable.

It occurs to us further that the words "wholesale storage of petroleum" as used in the zone ordinance may not apply to an installation such as this.

If it be assumed that gasoline would be included in the classification of "petroleum," nevertheless the word "wholesale" seems to us to be employed in its ordinary significance, indicating sale in quantities, as opposed to sales at "retail." A "wholesale" storage, where the product is disposed of in bulk quantities, such as to tank wagons, which thus obtain their supplies for retail distribution, is quite unlike one where the storage tanks are designed only to supply by gravity through pipes the nearby smaller tanks out of which the gasoline is pumped for the consumer. There is no procession of vehicles, each taking its load of gasoline; none of the special hazards manifestly incident to such a traffic. In this view, the installation would not in any event fall within the terms of even the zone ordinance.

Expenditure by appellee of this large amount on installation and equipment of this plant, under the facts and circumstances here appearing, in our judgment presents a case where the revocation of the permit, and stoppage of the work, would deprive appellee of its property without due process of law. Dobbins v. Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 49 L. Ed. 169.

There is yet another feature upon which so far we have not dwelt. It is the contention by appellee that the conduct of the city officials has been such as to deny appellee the equal protection of the laws. This was sought to be shown by the fact that, under substantially like circumstances as here appear, various others have been permitted to make and maintain large installations, far in excess of alleged ordinance limits, both before and after these occurrences, and they have been in no manner disturbed by the city or its officials. Examination of the transcript satisfies us that there is good reason to conclude that this is so.

We think it may be fairly said that the openly manifested purpose of preventing price cutting of gasoline within the city, and to that end resisting the location in the city of bulk or storage tanks fillable from cars on adjacent tracks, in connection with a filling station, has so far dominated these transactions on behalf of appellants as to indicate a definite purpose and plan of discriminating unlawfully against this installation. We think it may be fairly gathered from the evidence that appellants have purposely and unlawfully denied to appellee that protection which they have nevertheless extended to practically all others. This, in our judgment, is violative of the Fourteenth Amendment to the Federal Constitution. Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; Dobbins v. Los Angeles, supra; D. J. Dunigan v. District of Columbia, 59 App. D. C. 384, 44 F.(2d) 892 (C. C. A.); City of Vincennes, Ind., v. Marland Refining Co., 33 F.(2d) 427 (C. C. A. 7).

We are satisfied that the relief awarded was equitable and justifiable, and the decree is affirmed.