**Billy G. MELTON, Appellant,**

v.

**CITY OF WICHITA FALLS and Jerry Gross, General Manager of the Wichita Falls Water Utilities, Appellees.**

**No. 2–89–090–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 28, 1990.

779

Law Offices of Ron L. Yandell and Ron L. Yandell and Suzan R. Sanders, Wichita Falls, for appellant.

H.P. Hodge, Jr., City Atty., and Bill Sullivan, Asst. City Atty., Wichita Falls, for appellees.

Before JOE SPURLOCK, II, HILL and MEYERS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This appeal is from the trial court's judgment denying Billy G. Melton, appellant, his request for city water service to his property lying outside of the city limits of the City of Wichita Falls, Texas, appellee. Melton's request for a permanent injunction to keep the city from stopping temporary service was also denied. Melton raises five points of error complaining of certain findings of fact and conclusions of law made by the trial court.

We affirm.

In his first four points of error, Melton argues that there was either insufficient or no evidence to support the trial court's findings of fact numbers eight (point of error one), seven (point of error number two), four (point of error number three), and three (point of error number four). We will discuss the evidence only as it relates to each point of error. In point of error five, Melton complains that there was no evidence to support the court's conclusion of law number two. While Jerry

Gross is listed as an appellee and is a general manager of the Wichita Falls Water Utilities, in this opinion, by "appellee," we refer only to the City of Wichita Falls.

The appeal is from a judgment denying Melton a permanent injunction against the City of Wichita Falls by which he sought to establish permanent water service to his residence located outside the city limits. There had been a temporary injunction entered in his favor in November of 1988, establishing the water service at the residence located at 3101 Old Windthorst Road from a twelve inch main which belonged to the city and existed south of the city limits along that road. Water and sewer service is currently being furnished to the residence, but the city is prohibited from discontinuing such service until the appeals have been exhausted.

■ Melton complains of certain findings of fact made by the trial court as a result of the hearing on the request for permanent injunction. In point of error number one, Melton complains that the court had either no evidence or alternatively insufficient evidence to support its finding of fact number eight that he, Melton, was not similarly situated to other non-residents who were granted service before the adoption of the City of Wichita's resolution number 69–86. That resolution, adopted on May 20, 1986, repealed a previous resolution number 10–57 and prohibited any connections for water service outside the corporate limits of the City of Wichita Falls. Almost two years after the adoption of resolution 69–86 Melton made his request for water service from the city. He asserts that he is similarly situated to other non-residents who receive water service under the old resolution 10–57, and therefore should have been connected to water service when he applied after the new ordinance went into effect.

Under section 402.001 of the Local Government Code the powers of the city are listed in regards to the operation of the water system. These powers include specifically the power to purchase, construct or operate a utility system inside or outside the municipal boundaries and to regulate the system in a manner that protects the interest of the municipality. The city notes that the section provides the power to contract with persons outside its boundaries to permit them to connect with the utility system on terms that the municipality considers to be in its best interest. TEX.LOCAL GOV.CODE ANN. sec. 402.001 (Vernon 1988). The city argues that the evidence established that the new ordinance 69–86 as passed, approved and repealed resolution 10–57 and prohibited any new connections for water service for any persons outside the corporate limits of the town. The city argues this was the purpose of the ordinance and the major effect of its passage. The appellant's request, almost two years after passage of 69–86, was treated the same as all other requests for new service from persons similarly situated at that time. That is, no one outside the city limits not already connected to the system before the adoption of resolution 69–86 was thereafter connected to the system.

The city concludes, and, by implication, the trial court found, that the operation of ordinance 69–86 is a reasonable exercise of the express power granted to the city. The exercise of such power is legislative in nature and will not be regulated by the courts unless the exercise by the city is clearly an abuse of its power. The law presumes that city officials act within the limits of their authority, in good faith, and in the best interest of the city they serve. *Kimbrough v. Walling*, 371 S.W.2d 691, 692 (Tex.1963).

Testimony by the witness for the city was that the adoption of the resolution was an attempt by the city to protect the interest of the municipality by controlling improper growth on its periphery and by encouraging the development of land within its corporate limits. There was no showing of any bad faith in the adoption of the ordinance, nor any favoritism shown to any affected by it. We agree with the city that the evidence is clearly sufficient to support the trial court's finding that appellant was not similarly situated to other non-residents outside the city who made applications for

water service before the adoption of the new ordinance. He was treated alike with other non-residents who applied after the ordinance went into effect. We overrule point of error one.

■ In his second point of error Melton complains that the city failed to demonstrate a reasonable basis to differentiate between those persons who were granted water service under the old resolution 10–57 and those who were denied water service after the adoption of resolution 69–86. In this connection he complains that there was either no evidence or in the alternative only insufficient evidence to support the court's finding of fact that a reasonable basis existed.

Melton argues that the evidence at trial showed that non-residents received water under the old resolution 10–57, if their property was contiguous to the city limits or to a city water line. The new resolution was passed to provide that no connection would be allowed outside the city limits of Wichita Falls. Melton does not argue that on its face the resolution is unreasonable in denying connection. He does not argue that the city officials acted in bad faith, or that their action in passing the ordinance was a clear abuse of their power to act. However, he argues that in practice the ordinance has been applied in an unreasonable and discriminatory fashion. To support his argument he points out that no connections existing outside the city limits *were discontinued* upon the passage of resolution 69–86. He argues in essence that people outside the city limits are therefore treated in an arbitrary fashion depending upon whether or not they had service by a certain date.

He additionally argues that the city did give a new water meter to an existing customer outside the city limits for a sprinkler system after the passage of resolution 69–86. Further, Jerry Gross, the Utilities Manager for the city, testified that there was no substantial difference between Melton's property on Windthorst Road and other properties on Windthorst Road which were receiving water service from the city at the time that the new ordinance went into effect. Melton concludes that he was similarly situated to those who were receiving service at the time the ordinance went into effect. Nevertheless, the city refused to provide service to Melton.

The city counters that the evidence considered by the trial court also showed that a stated purpose for passage of the ordinance was to prevent improper development along the periphery of the city. One way to accomplish this desired purpose of the city was to refuse to provide any *new* water connections to persons along the periphery of the city. The city had recently installed a major water system line which extended outside the city limits and created a substantial potential for uncontrolled growth if resolution 10–57 were not repealed. For that reason it was repealed. Testimony showed that the main ingredient for development either within or without the city is water, and that the purpose for the adoption of resolution 69–86 was to promote development within the corporate limits of the city as there was a considerable amount of vacant and undeveloped land lying therein. Clearly, controlling development is a legitimate goal of the city and resolution 69–86 was reasonably calculated to achieve that goal.

Just as clearly, resolution 69–86 is non-discriminatory both on its face and in its application, for it is prospective only in its application and treats all persons within the same circumstances (or class) as Melton, alike. The appellee notes that in finding of fact number six the trial court found that the appellee had denied water service to all non-resident applicants, including Melton, who applied for service after the passage of resolution 69–86. As appellant has not challenged this finding of fact, it therefore is conclusive and binding on appellant and on this appeals court. *See Jack v. State*, 694 S.W.2d 391 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Appellant was not treated differently from those in a similar situation. There are clear, non-discriminatory, reasonable distinctions between those who already had service, and those who will not get it. If you already had it, you kept it. If you did

not have it, for the protection of the growth of the city and promotion of interests of the city, you will not get the service. The city concludes, therefore, and we agree, that there is sufficient evidence to support the trial court's finding. Point of error number two is overruled.

In point of error number three, Melton complains that there is either no evidence or only insufficient evidence to support finding of fact number four that the passage of both resolutions was an effort by the city to control proper development on the periphery of the city and that the attempts by the city to control that growth are logical and reasonable. We have reviewed the arguments of appellant and find that they are without substance, that the previous testimony discussed under point of error number two is sufficient to establish the court's finding of fact in this regard. We believe, as the city argues, that one way to control the problem of improper growth around the periphery of the city, and to promote the development and growth within vacant land in the city, is to prohibit any new connections for water service beyond the city's boundary, because water is a main ingredient for the development of a city. The exercise of the power by the city officials to provide a suitable water supply rests largely in their discretion. In the exercise of that discretion, they may oppose those activities that are detrimental to the present or future water supply they are required to provide for the inhabitants of the city. *See Kimbrough*, 371 S.W.2d at 693. Accordingly we overrule point of error number three.

In point of error number four, Melton complains that there is either no evidence or only insufficient evidence to support finding of fact number three that the city in fact passed and approved resolution 69–86 which repealed resolution 10–57 and *which prohibited any new connections* for water services outside its corporate limits. In his argument, Melton makes reference to several cases dealing with statutory construction and with ambiguity in reading ordinances or statutes. His basic argument is that resolution 69–86 provides that

*no* connection shall be allowed to water mains outside the City of Wichita Falls. While this language is clear and unambiguous, the trial court found that the resolution prohibited any *new* connections for water service outside the corporate limits. Melton's argument in essence is that as the statutory language reads *no* connections, it follows that those connections which previously existed must be removed. To Melton, this is the clear intent of the language of the ordinance. Melton says that when the court found that the ordinance in effect prohibits any *new* connections, as the city employee so testified, the court was rewriting the ordinance and attempting to legislate without proper authority. He argues that under Texas law, the resolution of an issue of statutory construction begins with an analysis of the statute itself; if it is clear and unambiguous, aids and rules of construction are unnecessary, and the statute should be given its common, every day meaning. He cites *Cail v. Service Motors Inc.*, 660 S.W.2d 814, 815 (Tex.1983) and *Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974).

We find the substance of his argument wholly without merit because under either circumstance there is no way that Melton could have his water connected to the city's water line, and therefore, there is no harm to him. The city argues, and we agree, that the only logical way that the ordinance could be applied, in accordance with the city's desire to control growth along its periphery, is to prohibit any *new* connections to water lines and therefore encourage persons to develop property within the city. The property outside the city which is receiving water has already been developed, and is not a barrier to the city's desired purpose of developing property lying within the city. There *could be* enormous consequences and discrimination if the ordinance were construed to require the city to cut-off water service to all locations outside the city. It is clear that the intention in the passage of resolution 69–86 is to control the *future* growth of the City of Wichita Falls and the court should not construe the language of the ordinance to require disconnection of existing services and create untold numbers of miseries. A

statute need not be ambiguous before consideration can be given to its objectives. *City of Houston v. Morgan Guar. Intern. Bank*, 666 S.W.2d 524, 529 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). We find that the trial court committed no error in this regard. Accordingly, the point of error is overruled.

■ In his fifth point of error appellant complains that the court erred in its conclusion of law number two that the denial by the city of water service to him was not arbitrary, capricious or discriminatory and was not a violation of his rights as guaranteed by the Texas and United States Constitutions. In order to establish that the city took actions which were discriminatory in violation of his rights (that is, that they denied him equal protection), Melton must establish that the city's actions in denying him water service were either motivated by ill-will or demonstrated a pervasive pattern of obstruction, misrepresentation, or hostility towards him. *Clear Lake City Water Authority v. Winograd*, 695 S.W.2d 632, 642 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

The city argues that there is absolutely no evidence in the record of any such intent or action by the city. The uncontroverted evidence is that appellee applied resolution 69–86 in a consistent manner and treated appellant the same as all other persons outside the city who applied for water service after the date of the new ordinance, as the court found in its finding of fact number six.

We find no substance to point of error number five, and conclude, as the trial court did, that the actions of the city were not arbitrary, capricious, or discriminatory, nor in violation of any of the rights of appellant. As appellee notes in its brief, the City of Wichita Falls is a home rule city and therefore has full power of local self-government subject to the limitations that its charters and ordinances shall contain nothing inconsistent with the constitutions of the United States and of the State of Texas or with the general law enacted by the legislature. *See Cook v. City of Addison*, 656 S.W.2d 650, 653 (Tex.Civ.App.—

Dallas 1983, writ ref'd n.r.e.). Instead of citing any particular place in the record, appellant concludes that the city's action was arbitrary, capricious and discriminatory. We disagree.

Appellant's argument that the city provides services to individuals, businesses, and social clubs which are similarly situated to appellant (entities which are outside of the city limits) is not on point in this matter as the water service to each of those entities was existing prior to the adoption of the new ordinance. The city's action was not motivated by any ill-will toward Melton, nor for any other prohibited reason. Nevertheless, Melton argues in support of his position that he has been treated in an arbitrary or capricious manner because none of those existing services were cut off at the time of the adoption of the city's ordinances. We find this argument is specious and without substance. Accordingly we overrule his point of error number five, and affirm the judgment of the court.

The judgment of the court is affirmed.