United States Court of Appeals,

Fifth Circuit.

No. 91–6052.

B.J. REID, et al., Plaintiffs–Appellants,

v.

ROLLING FORK PUBLIC UTILITY DISTRICT, et al., Defendants–Appellees.

Dec. 23, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

In this equal protection case, Plaintiff–Appellant B.J. Reid challenges the take nothing judgment entered against him by the district court, which based its judgment on the jury's answer to the first of eight special interrogatories. Reid contends that the court erred in relying on the first interrogatory alone and disregarding the remaining seven. As we find that, when answered in the negative, only the first interrogatory was relevant to the outcome of the case, we affirm the take nothing judgment.

I. FACTS AND PROCEEDINGS

This case began in November 1982, when the Defendant–Appellee, Rolling Fork Public Utility District ("the District"), began developing plans for the expansion of its sewage treatment plant. As part of these plans, the District's engineer mailed a planning letter to ascertain individuals' water and sewer needs. The letter stated that failure to respond would result in the allocation of resources as if a conventional single family development were planned. Plaintiff–Appellant's father, at the time the owner of property slated for the development of 175 condominiums, failed to respond to the letter. Accordingly, the District issued a commitment to serve 85 condominium units.

In September 1983, Reid acquired ownership of the land from his father and requested a commitment from the District to serve the total 175 units. The board of the District voted to deny the application, citing seven reasons, including economic factors, actual capacity of the plant, delay

in notification, and historic problems between the District and the corporations owned by Reid.

Reid sued the District and two of its board members alleging a violation of the Equal Protection clauses of the Federal and Texas Constitutions. The jury returned a verdict for Reid against all defendants.

On appeal, a panel of this court, in *Reid v. Rolling Fork Public Utility District*[1] (*Reid I* ) vacated and remanded for a new trial, holding that the jury instructions constituted reversible error. In so doing, the court stated:

> Even if we could accept [Reid's] version of the facts, the District would be insulated from an action for denial of equal protection if there is any rational basis for rejecting the requested commitment. *That issue must be resolved by a properly instructed jury.*[2]

On remand, the district court followed the guidance of *Reid I* and submitted to the jury the appropriate "reasonable basis test." Specifically, the court propounded eight special interrogatories to the jury, several of which are the subject of this appeal. At the second trial, Reid claimed that after the District's initial denial of his application, he offered to resolve the expressed problems by paying for the needed expansion and accepting utility service for each unit as it became available. In his appellate brief, Reid argues that his offers removed any legitimate objections the District could have, leaving only the bias that Reid alleges the District holds against his father. Reid challenges as pretextual the other reasons cited by the District, maintaining that the history of problems between his father and the District supports his claim of impermissible bias, and disputing the assertion that his father failed to respond to the District's letter.

## II. STANDARD OF REVIEW

Because this case comes before us on appeal for a second time, our review of issues already decided is constrained by the "law of the case" doctrine, which states that:

> The decision of a legal issue by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case at both the trial and appellate levels unless the evidence at a subsequent trial was substantially different, the controlling authority has since made a contrary decision of law applicable to such issues, or the decision

---

[1] 854 F.2d 751 (5th Cir.1988).

[2] *Id.* at 755 (emphasis added).

was clearly erroneous and would work a manifest injustice.[3] Thus, "our task on subsequent review ... is to follow the findings, holdings, and instructions contained in the appellate court's initial mandate, absent an extremely good reason to do otherwise."[4]

To the extent that Reid here raises question not decided in *Reid I,* we are free to consider the issues according to our established standards of review. Reid presents two such issues in the instant case, bo th of which are subject to de novo review. First, he maintains that the district court impermissibly disregarded several of the special interrogatories that created an inconsistency with the take nothing judgment. We need not establish a standard of review for this claim because there is in fact no inconsistency. The first two interrogatories are a statement of the applicable law, which we review de novo.

Second, Reid claims that the district court erred in its application of Texas law in determining his state equal protection claim. We review a district court's determination of state law de novo and without particular deference.[5]

### III. ANALYSIS

### A. INCONSISTENT INTERROGATORIES

Reid challenges the district's decision on equal protection grounds, alleging violations of both the federal and state constitutions. As the panel stated in *Reid I,* this case does not implicate a fundamental right or a suspect classification and is thus subject to the reasonable basis test, i.e., the decision of a governmental body does not violate the equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end.

As we have noted, the district court, in its instructions to the jury, followed our *Reid I* decision and defined the reasonable basis test correctly. In the end, the court submitted a total of

---

[3]*Schexnider v. McDermott Int'l Inc.,* 868 F.2d 717, 718–19 (5th Cir.1989) (citation omitted); *see also Hermann Hosp. v. MEBA Medical & Benefits Plan,* 959 F.2d 569 (5th Cir.1992).

[4]*Vieux Carre Property Owners v. Brown,* 948 F.2d 1436 (5th Cir.1991) (citation omitted).

[5]*Salve Regina College v. Russell,* ⸺ U.S. ⸺, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

eight special interrogatories to the jury. At the center of this case are the first two of these interrogatories as well as the court's instructions to the jury concerning the manner in which these interrogatories should be answered. Interrogatory No. 1 and its instructions read in pertinent part:

> You are ... instructed that it is not arbitrary for a District like Rolling Fork to refuse to provide utility service to property within its boundaries so long as there is any basis for the action taken that bears a debatably rational relationship to a conceivably legitimate governmental end. You are further instructed that as long as there is *a* conceivable rational basis for the official action, for the denial, it is immaterial that it is not *the* or *a* primary factor in reaching a decision or that it was not actually relied upon by the decision makers or that some *other* non-suspect irrational factors may have been considered.

> Special Interrogatory No. 1:

> Was there no conceivable rational basis for the action of the District in rejecting the commitment requested by Plaintiffs? Answer "Yes" if you find that there was no conceivable basis for the rejection of the commitment requested by Plaintiffs. Otherwise answer "No".

The jury answered this question in the negative, thus finding that there was a conceivable rational basis for the District's decision. The District, not surprisingly, argues that this first finding is the end of the case; that once the jury found a conceivable rational basis, by definition there could be no equal protection violation.

On the other hand, Reid disputes the applicability of Interrogatory No. 1 with two arguments. He first argues, with no citation of authority, that the determination of a rational basis is a question of law, not fact, and thus the court erred by submitting the question in the first place. This argument is inconsistent with *Reid I,* in which the panel clearly determined that the question was one for a properly instructed jury. But, even if the *Reid I* panel were incorrect, its decision bound the district court, as it binds us, in all subsequent proceedings unless, under the "rule of the case" doctrine, one of the three recognized exceptions appertain.[6] As Reid has failed to advance any arguments that the

---

[6]These exceptions are:

> (1) the evidence adduced on retrial was substantially different; (2) controlling authority has since overruled the decision of law embraced by the appellate mandate; or (3) the prior panel's decision is manifestly unjust and clearly erroneous, striking the court "as more than just maybe or probably wrong; it must be dead wrong."

*City Public Serv. Bd. v. General Elec. Co.,* 935 F.2d 78, 82 (5th Cir.1991) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.,* 866 F.2d 228, 233 (7th Cir.1988)).

*Reid I* panel was incorrect and has failed to cite any authority for his proposition, *Reid I* stands as binding precedent for the instant appeal (*Reid II* ).

Reid does, however, offer his own interpretation of *Reid I,* focusing on the panel's instruction that the District may rationally deny service based on present lack of capacity, even if it expects to have sufficient capacity when the service actually would be provided. The *Reid I* panel reasoned that a utility could rationally choose a conservative approach that would require it to refuse the risk that future capacity would not materialize.[7] Reid argues that his offer to fund the expansion and to accept sewage service immediately as it became available removed any risk and thereby rendered that argument nugatory. Even if we assume that Reid is correct, however, his contention is irrelevant because it merely addresses the outcome of the jury's decision—not whether the jury was the appropriate body to determine the issue.

Second, Reid insists that Interrogatory No. 1 is a "non-finding" and is inconsistent with Interrogatory No 2. Reid attempts to explain that Interrogatory No. 1 is a non-finding because the jury answered it in the negative. He claims that "[t]he District ... sometimes backslides into the cozy but insupportable position that the "no" answer constitutes a finding in its favor. No authority is cited for the passing statements that the "no" answer is a finding of the converse of the inquiry." Reid's argument fails because Interrogatory No. 1 was purposefully phrased in the negative; and, more importantly, the court's instructions for answering it clearly states that an answer of "no" means that there *was* a conceivable rational basis. And, by the very definition of the reasonable basis test, the existence of such a basis exonerates the District.

In connection with this second point, Reid also insists that Interrogatory No. 1 is not controlling because it is inconsistent with Interrogatory No. 2, which asks:

> Did the District arbitrarily and capriciously deny the request for commitment by plaintiffs. "Arbitrary" and "capricious" means unreasonable action or unreasonable discrimination so that plaintiffs were not reasonably afforded the same opportunity for utility service extended to others similarly situated in the District.

At first glance, the jury appears to have created an inconsistency when it proceeded to answer this

---

[7]*Reid I,* 854 F.2d at 755.

second question in the affirmative. Reid argues that Interrogatory No. 2 controls, repeating his claims that Interrogatory No. 1 is invalid either because it was improperly submitted to the jury or because it is a "non-finding." Reid also offers the argument that Interrogatory No. 2 controls because the District offers no reason why Interrogatory No. 1 should control.

To the contrary, the District does offer an explanation for the apparent inconsistency between Interrogatories No. 1 and 2, and a very plausible one at that. The District reads Interrogatory No. 1 as asking if there is *any conceivable* rational basis for the decision, and reads Interrogatory No. 2 as asking whether the District *in fact* relied on an irrational or arbitrary ground. The District concludes that this is perfectly consistent with the test restated in *Reid I,* to wit:

> As long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmaker or that some *other* nonsuspect irrational factors may have been considered.[8]

Thus, there is no inconsistency between the two interrogatories, one of which asks whether the jury could conceive of any rational basis for the District's action and the second of which asks whether the District in fact relied on some different, irrational factor. The only determinative question is Interrogatory No. 1, for, as the test states, whether the decisionmaker actually relied on the conceivable rational basis is irrelevant; its mere existence is sufficient to eschew an equal protection violation.

Reid's arguments are wholly unpersuasive. In *Reid I,* a panel of this court directed the district court on remand to submit to the jury the reasonable basis test. The district court did so in the form of Interrogatory No. 1, accurately following the *Reid I* panel's directions. Now, despite the district court's adherence to our first panel's directions, Reid tries to claim that the trial court erred in doing so. Moreover, Reid's interpretation of *Reid I* as proscribing a test based on risk is irrelevant to his contention that the reasonableness of the decision was a question of law. We conclude that once the jury determined that there existed a reasonable basis for the District's decision, the ball game was over—the other interrogatories instantly became irrelevant surplusage and the jury's response to them

---

[8]*Id.* at 754 (citations omitted).

simply must be ignored.  True, it would have been preferable for the jury to have been instructed to go no further if it answered "no" to Interrogatory No. 1, but we do not require perfection, merely adequacy—and here there was more than adequacy.

## B. STATE EQUAL PROTECTION CLAIM

Reid also urges that even if his federal constitutional claim is defeated, his claim under the Texas Constitution's equal protection clause survives.  He concedes that equal protection cases under the Texas state constitution "echo federal standards,"[9] but argues that "echo" does not mean the standards are "coextensive."  Instead, he cites a recent Texas Supreme Court decision, *Davenport v. Garcia,*[10] as supporting his argument that Interrogatory No. 2 articulates the correct state standard for equal protection claims.  We find no such support in *Davenport.*

Reid's arguments here are equally without merit.  First, he is incorrect in stating that the Texas equal protection clause is not coextensive with the equal protection clause of the United States Constitution.  There is ample support in Texas case law for the District's contention that the same requirements are applied to equal protection challenges under the Texas Constitution as to those under the United States Constitution.[11]

Second, Reid's reliance on *Davenport,* is misplaced.  In its opinion, the Texas Supreme Court discussed at length the undisputed rule that a state court may give more expansive rights to its citizens under its state constitutions than are found under the U.S. Constitution.  The court also adopted the position described as the "new federalism," which suggests that courts of the state should *look to its*

---

[9]*Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990).

[10]834 S.W.2d 4 (Tex.1992).

[11]*See Goheen v. Koester,* 794 S.W.2d 830, 834 n. 3 (Tex.App.—Dallas 1990, writ denied) ("The equal protection clause of the United States Constitution has been held to be co-extensive with article I, section 3 of the Texas Constitution."); *Twiford v. Nueces County Appraisal Dist.,* 725 S.W.2d 325, 328 n. 5 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (holding that the "same requirements" apply to equal protection challenges under the Texas and U.S. Constitutions).  The state standard parallels the federal standard when it states that any rational basis that can be conceived to support the legislative action under review will satisfy constitutional muster. *Walker v. Employees Retirement Sys.,* 753 S.W.2d 796, 797 (Tex.App.—Austin 1988, writ denied);  *see also Garza–Vale v. Kwiecien,* 796 S.W.2d 500, 506 (Tex.App.—San Antonio 1990, writ denied) ("If there *could* exist a state of facts justifying legislative classifications or restrictions, the reviewing court will assume its existence.").

*constitution first.* The Texas Supreme Court then does exactly that in *Davenport,* concluding, after an extensive discussion of the history of free speech in Texas, that the Texas Constitution forbad the gag rule in question.

Reid argues that the court's general language in favor of expanding citizens' rights by use of the state constitution supports his argument that the reasonable basis test does not apply to his state constitutional claim. In its simplest form, Reid's argument is that the Texas Supreme Court has changed the rational basis test because the court apparently embraced a more protective position on free speech under the state constitution. He again cites no authority for his proposition.

Moreover, Reid's argument that Interrogatory No. 2 expresses the correct state standard derives from the language in another Texas Supreme Court case, which held that "the Texas version of the rational basis test [is that] similarly situated individuals must be treated equally ... unless there is a rational basis for not doing so."[12] But this language is far more compatible with Interrogatory No. 1 than with Interrogatory No. 2, weakening rather than supporting Reid's position.

In addition, Reid argues that in each of the two Texas cases involving a Texas equal protection cause of action against water districts, the court submitted jury questions in substantially the same terms as Interrogatory No. 2.[13] We disagree.

The first of Reid's cases, *Inverness Forest Improvement District v. Hardy Street Investors,* does not address the issue of jury instruction, but merely states that the jury found that the district had acted arbitrarily in denying service. His second case, *Clear Lake City Water Authority v. Winograd,* does quote the jury instruction, which reads:

> Equal protection of the laws requires that the government base any differences in treatment of applicants on rational criteria that are reasonably related to a legitimate function of that particular governmental unit.[14]

Reid argues that this definition poses a jury question essentially identical to Interrogatory No. 2,

---

[12]*Whitworth v. Bynum,* 699 S.W.2d 194, 197 (Tex.1985).

[13]*Clear Lake City Water Auth. v. Winograd,* 695 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Inverness Forest Improvement Dist. v. Hardy Street Investors,* 541 S.W.2d 454 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.)

[14]*Winograd,* 695 S.W.2d at 635.

focusing on whether there was *actual* reliance on a rational criteria, not whether a conceivable rational basis exists.

Again, Reid's arguments are unpersuasive. It is clear that in the past Texas courts have applied the reasonable basis test to state equal protection claims. He argues that the Texas courts have since changed that position, but he offers no direct authority for his proposition. Instead, he relies on two cases, *Davenport* and *Winograd,* neither of which implies, much less expresses, a new standard for testing state equal protection clause claims.

The District urges that even if we were to accept Reid's arguments, he could not prevail because the Texas Constitution precludes monetary damages for equal protection claims. As irrefutable as that proposition may appear, we need not and therefore do not reach its point, given the foregoing determination that the "no" answer to Interrogatory No. 1 writes finis to Reid's action. Neither do we see any need to address either of the two remaining issues, one concerning the jury's finding of no damages and the other concerning admission of a District board member's testimony. It suffices that they are so lacking in merit as to approach frivolity.

## IV. CONCLUSION

Reid offers a variety of conclusionary reasons why the district court erred in entering a take nothing judgment against him. He fails, however, to provide viable support for any of his contentions. We find that the district court submitted the correct jury instruction in Interrogatory No. 1, faithfully following the *Reid I* panel's direction. As Reid's arguments are so unpersuasive, often bordering on being frivolous, the district court's take nothing judgment is

AFFIRMED.