**In the Interest of G.C., A Minor Child.**

**No. 2–99–003–CV.**

Court of Appeals of Texas,
Fort Worth.

Jan. 3, 2002.

Simon C. Gonzalez, Fort Worth, Attorney for Appellant.

Jerry Buckner, Weatherford, Attorney Ad Litem.

Fred M. Barker, Assistant County Attorney, Weatherford, Attorney for Appellee.

PANEL A: CAYCE, C.J., and DAY and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

Appellant F.M. appeals the trial court's judgment terminating her parental rights to her child G.C. Appellant raises four issues on appeal challenging the trial court's denial of her motion for a twelve-person jury, the constitutionality of section 25.0007 of the Texas Government Code, and the legal and factual sufficiency of the evidence to support the termination of her parental rights. We affirm.

### II. BACKGROUND

In 1995, Linda Blair, a caseworker with the Texas Department of Protective and Regulatory Services (TDPRS), was called to intervene in a medical situation between Dr. Jyothi Reddy and Appellant. Dr. Reddy wanted to take a blood sample to determine the cause of G.C.'s obesity; however, Appellant refused to give permission. At this time, G.C. was four years old and weighed ninety-seven pounds. Due to this report, TDPRS began an investigation of Appellant for medical neglect.

During the course of TDPRS's investigation, Appellant changed doctors two times. G.C.'s ultimate doctor, Dr. Susan Walker, placed him on a strict diet to combat his obesity. Despite Dr. Walker's instructions, however, G.C.'s weight continued to climb throughout the end of 1995 and first half of 1996, ultimately reaching 136 pounds. G.C. was hospitalized in April 1996 because he was having difficulty breathing and for a mildly enlarged heart and mild congestive heart failure. Dr. Walker continued to see G.C. after he got out of the hospital, but G.C.'s weight failed to make any depreciable change. Therefore, Dr. Walker contacted Child Protec-

tive Services. G.C. was consequently removed from Appellant's care and placed in the care of Susan Kaler, G.C.'s first foster mother. During his time with Kaler, G.C.'s weight began to drop.

Initially, TDPRS attempted to help Appellant by bringing in a "homemaker" to be a role model to Appellant, referring Appellant to Family Services for parenting classes, and providing Appellant with a service plan. However, after Appellant became noncompliant, TDPRS moved to terminate Appellant's parental rights.

## III. CONSTITUTIONALITY OF SECTION 25.0007 OF THE TEXAS GOVERNMENT CODE

■ Prior to trial, Appellant orally and by written motion requested that the trial court empanel a twelve-member jury, which the trial court denied. In her first through third issues, Appellant complains about the trial court's denial of her motion.

Appellant's case was heard in the Parker County Court at Law, a statutory county court. *See* Tex. Gov't Code Ann. § 25.1861 (Vernon 1988). Section 25.1862(a)(2) of the government code provides that the Parker County Court at Law has concurrent jurisdiction with the district court over family law matters, which include termination of parental rights. *Id.* § 25.1862 (Vernon Supp.2002); *see also id.* § 25.0002 (including termination of parental rights in the definition of "family law cases and proceedings"). Under section 25.0007 of the government code, all practice and procedural rules, other than the number of jurors, governing "the conduct of trials and hearings in the statutory county courts ... that involve ... matters of concurrent jurisdiction with district courts are governed by the laws and rules pertaining to district courts." *Id.* § 25.0007 (Vernon Supp.2002). Under this statutory scheme, while Appellant's

family law case fell within the concurrent jurisdiction of the district court and statutory county court, the number of jurors was still governed by the law of the county courts. *See id.* (providing that the drawing of jury panels and selection of jurors in a statutory county court must conform to the law of the county courts). If the case were heard in the statutory county court, then, pursuant to the government code, the parties would be entitled to a six-member jury. *See id., see also* Tex. Const. art. V, § 17 (explaining that a jury in a county court is to be composed of six members). However, if that same family law case were tried in the district court, then the government code would mandate a twelve-member jury. *See* Tex. Const. art. V, § 13 (providing for a twelve-member jury in cases brought in district court). Therefore, because Appellant's termination case was heard in the statutory county court, Appellant was only entitled to a jury composed of six members. *See* Tex. Const. art. V, § 17. As such, the trial court did not err in denying Appellant's motion to empanel a twelve-member jury in her termination trial.

Appellant, however, alleges that the empaneling of only six jurors violated her equal protection and due process rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Texas Constitution. Specifically, Appellant complains about section 25.0007's constitutionality, arguing it: (1) "fails to afford the same protection and right to a twelve-member jury trial on issues of family law heard in a statutory county court having concurrent jurisdiction with the district court" as are afforded to other issues subject to the concurrent jurisdiction with the district court and (2) "deprives Appellant the rights that are afforded to any other litigant in any dis-

trict court regarding family law cases and proceedings."

## A. EQUAL PROTECTION

Appellant essentially argues that the statutory scheme creates a discriminatory classification that violates her equal protection rights.[1] The basis of Appellant's first argument is that a party to a family law case in the Parker County Court at Law should be entitled to a twelve-member jury just as litigants are when the Parker County Court at Law acts as a statutory probate court.

As mentioned above, the government code gives the statutory county court of Parker County concurrent jurisdiction over family law matters with the district court. TEX. GOV'T CODE ANN. § 25.1862(a)(2). When the statutory county court addresses a family law issue over which it has concurrent jurisdiction with the district court, the government code mandates that it follow the law for county courts in determining the number of jurors. *Id.* § 25.0007. Under section 25.0007, a party to a family law proceeding in a statutory county court is entitled to a six-member jury. TEX. CONST. art. V, § 17. Appellant argues that the same is not true when the statutory county court acts as a statutory probate court.

Appellant alleges that "when the Parker County Court at Law hears a probate case involving an issue of concurrent jurisdiction with the district court, it becomes a statutory probate court" and is subject to the provisions of section 25.0027 of the government code that provides for a twelve-member jury. However, Appellant's characterization of the statutory county court's jurisdiction over probate matters is inaccurate. It is true that a party bringing a probate matter before a statutory probate court is entitled to a twelve-member jury. *See* TEX. CONST. art. V, § 13 (establishing the number of jurors in a district court proceeding); TEX. GOV'T CODE ANN. § 25.0027 (Vernon Supp.2002) (providing that the number of jurors in a probate court matter is governed by the laws pertaining to district courts). However, a statutory probate court and a statutory county court are not one in the same; a statutory county court does not become a statutory probate court by the mere exercise of its probate jurisdiction. *See* TEX. GOV'T CODE ANN. § 25.0003(f) (stating that a statutory county court does not have the jurisdiction granted to a statutory probate court by the Texas Probate Code); *Id.* § 25.0022(a) (explaining that a statutory probate court has the meaning set out in the probate code); TEX. PROB.CODE ANN. § 3(ii) (Vernon Supp.2002) (providing that "a county court at law exercising probate jurisdiction is not a statutory probate court under this Code unless the court is designated a statutory probate court under Chapter 25, Government Code").

The government code has not established any statutory probate court in Parker County. Instead, chapter 25 of the government code has merely given the statutory county court of Parker County concurrent jurisdiction with the district court over contested probate matters. *See* TEX. GOV'T CODE ANN. § 25.1863(b) (Vernon Supp.2002). Therefore, family law matters and contested probate matters heard by

---

1. The same requirements for an equal protection claim are applied under the Texas Constitution as under the United States Constitution. *See Reid v. Rolling Fork Pub. Util. Dist.,* 979 F.2d 1084, 1089 n. 11 (5th Cir.1992); *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990) (op. on reh'g); *Sanders v. Palunsky,* 36 S.W.3d 222, 224 (Tex.App.—Houston [14th Dist.] 2001, no pet. h.). Therefore, we will address Appellant's state and federal constitutional challenges together.

the Parker County Court at Law are both governed by the same provisions of the government code relating to the number of jurors. *See* TEX. GOV'T CODE ANN. § 25.1862 (providing for Parker County Court at Law's concurrent jurisdiction with the district court over family law matters); *Id.* § 25.1863 (establishing Parker County Court at Law's concurrent jurisdiction with the district court over contested probate matters); *Id.* § 25.0007 (stating that number of jurors in matter subject to concurrent jurisdiction between statutory county court and district court is governed by laws prescribed to county courts). Accordingly, because the government code does not distinguish between parties involved in probate and family law matters heard by the Parker County Court at Law, it is not subject to equal protection scrutiny. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.) (explaining that when state action does not " 'appear to classify or distinguish between two or more relevant persons or groups, ... the action—even if irrational—does not deny them equal protection of the laws' .... because such state actions are not subject to Equal Protection scrutiny") (citations omitted), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *Sanders*, 36 S.W.3d at 225 (stating that party asserting equal protection claim must first establish that he was treated differently than similarly-situated parties).

■ Second, Appellant argues that the legislative scheme violates her equal protection rights by affording different rights to family law litigants in the statutory county court and district court. While family law litigants are allowed only a six-member jury in the statutory county court, those same litigants would be allowed a twelve-member jury if their case were heard in the district court. *See* TEX. GOV'T CODE ANN. §§ 25.0007, 25.1862; *see also* TEX. CONST. art. V, § 13 (providing for twelve-member juries in district court), TEX. CONST. art. V, § 17 (affording six-member juries in county courts). It is clear that section 25.0007 distinguishes between those parties to the same causes of action tried in the statutory county court and district court. Therefore, we must first decide whether section 25.0007 operates to the disadvantage of some suspect class or impinges on a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973).

■ Appellant argues that section 25.0007's distinction warrants strict scrutiny review because it involves an issue of fundamental liberty—the natural rights between a parent and a child. *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972) (recognizing the Court's emphasis on the importance of the family and parent's cardinal rights to custody, care, and nurture of the child); *In re G.M.*, 596 S.W.2d 846, 846 (Tex.1980) (acknowledging Supreme Court's acceptance that involuntary termination of parental rights involves fundamental constitutional rights); *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976) (explaining natural right that exists between parents and their children is one of constitutional dimensions). Reasonable regulations that do not significantly interfere with fundamental rights, however, may legitimately be imposed. *See Zablocki v. Redhail*, 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978) (explaining while the right to marry is fundamental, not every state regulation relating to incidents of or prerequisites for marriage is subject to rigorous scrutiny). Because the number of jurors allowed to hear a termination of parental rights case does

not significantly interfere with fundamental parental rights, we cannot agree that Appellant's complaint is subject to strict scrutiny review. As such, we will review Appellant's complaint under the rational basis standard. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 939 (Tex.1998) (explaining that challenged statute that neither singles out suspect class nor affects fundamental right need only be rationally related to legitimate state interest), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

■■■■ A classification neither involving fundamental rights nor proceeding along suspect lines is afforded a strong presumption of validity. *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Consequently, under rational basis review, the statute is presumed constitutional as long as the provision is rationally related to a legitimate governmental purpose. *See, e.g., Kadrmas v. Dickinson Pub. Schs.,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). Under this analysis, Appellant has the burden to negate every conceivable basis that might support the legislative arrangement. *Heller,* 509 U.S. at 320, 113 S.Ct. at 2643; *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973).

■■■ A legislature that creates different classifications need not actually articulate at any time the purpose or rationale supporting its classification. *Heller,* 509 U.S. at 320, 113 S.Ct. at 2642 (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992)). Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Id.* (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993)). As TDPRS points out, a legitimate state interest in the statutory scheme could be to reduce the significant fiscal and administrative burdens introduced by the continued use of twelve-member juries in all civil cases traditionally within the jurisdiction of the district courts. Because Appellant's arguments on appeal merely point out the classifications created by the statute, but do not present any argument negating this legitimate basis for the statutory scheme, we cannot conclude that the scheme violates her equal protection rights under the Fourteenth Amendment of the United States Constitution or Article I, Section 3 of the Texas Constitution. *See id.* at 321, 113 S.Ct. at 2643 (explaining that statutory classification does not fail merely because it results in some inequality in practice) (citing *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)).

## B. DUE PROCESS OF LAW

■■■■ Appellant also argues that this statutory scheme violates her due process rights under the Fourteenth Amendment of the United States Constitution and her due course of law guarantees under Article I, Section 19 of the Texas Constitution. The Supreme Court has explained that the Due Process Clause of the Fourteenth Amendment encompasses three types of protection. *See Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). First, it incorporates many of the specific protections defined in the Bill of Rights. *Id.* Second, the substantive component of the Due Process Clause bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Id.* (citing *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)). Third, the procedural aspect of the Due Process

Clause guarantees fair procedure. *Id.* Appellant's argument on appeal centers around the disparity between the number of jurors in a termination case heard in the district court and the statutory county court of Parker County. As such, she complains about the fairness of the process of her termination, which falls within the procedural aspect of the Due Process Clause.[2] *See id.* Therefore, we must determine whether Appellant has a liberty or property interest that is entitled to procedural due process protection, and if she does, what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Than,* 901 S.W.2d at 929.

The Supreme Court has stated that a liberty interest under the Fourteenth Amendment

> denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, *establish a home and bring up children,* to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972) (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)) (emphasis added). Likewise, the Texas Supreme Court

has recognized that involuntary termination of parental rights involves fundamental constitutional rights. *See G.M.,* 596 S.W.2d at 846. Therefore, we hold that Appellant's right to retain custody of her children is a constitutionally protected liberty interest and must be afforded procedural due process.

■ Having concluded that due process applies, we must determine what process is due. The Supreme Court has provided that evaluation of a claim of procedural due process deprivation requires a consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Heller,* 509 U.S. at 330–31, 113 S.Ct. at 2648; *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

The application of these factors compels us to conclude that Appellant's due process rights were not violated by having only six jurors evaluate the facts of her case. As demonstrated by her argument in front of the trial court, Appellant is concerned about the accurate determination of the issues involved in terminating her parental rights. While Appellant is afforded a right

2. While the Texas Constitution is textually different from the United State's Constitution in that it refers to "due course" rather than "due process," the Texas Supreme Court regards the terms without any meaningful distinction. *Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995). As such, the supreme court has traditionally followed contemporary federal due process interpretations of procedural due process issues. *Id.; see also Spring* *Branch Indep. Sch. Dist. v. Stamos,* 695 S.W.2d 556, 560–61 (Tex.1985); *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 252–53 (1887). Moreover, the supreme court has used the United States Supreme Court's procedural due process test to evaluate a state due process claim. *See Than,* 901 S.W.2d at 930. Therefore, we will address Appellant's due process and due course of law claims together.

to trial by jury before her parental rights may be terminated, she is not arguing that she was not afforded a trial by jury. *See, e.g., In re V.R.W.,* 41 S.W.3d 183, 194 (Tex.App.—Houston [14th Dist.] 2001, no. pet.) (explaining that right to jury trial in civil case arises when party demands it and pays applicable jury fee). Instead, Appellant contends that the size of the jury prejudiced her. The issues affecting her parental rights, Appellant feels, could be more appropriately evaluated by twelve jurors instead of six. However, this interest must be balanced with the other two factors.

The Supreme Court has already addressed and rejected Appellant's argument that a six-member jury erroneously deprives a person of a protected private interest. *See Colgrove v. Battin,* 413 U.S. 149, 152–60, 93 S.Ct. 2448, 2450–54, 37 L.Ed.2d 522 (1973) (civil case under the Seventh Amendment); *Williams v. Florida,* 399 U.S. 78, 100–03, 90 S.Ct. 1893, 1906–07, 26 L.Ed.2d 446 (1970) (criminal case under the Sixth Amendment). In *Williams,* the appellant, who was afforded a six-member jury in his robbery trial, challenged Florida's practice of impaneling six-man juries in all but capital cases. *Williams,* 399 U.S. at 79–80, 90 S.Ct. at 1895. Specifically referring to experiments in civil cases, the Supreme Court stated that there is no discernible difference between the results reached by twelve-member versus six-member juries. *Id.* at 101, 90 S.Ct. at 1906. "[T]he number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community." *Id.* at 100, 90 S.Ct. at 1906. But the Court went on to conclude that "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.' " *Id.* at 102, 90 S.Ct. at 1907 (citing *Duncan v. Louisiana,* 391 U.S. 145, 182, 88 S.Ct. 1444, 1466, 20 L.Ed.2d 491 (1968) (Harlan, J., dissenting)). Therefore, the Supreme Court left the number of jurors to afford criminal defendants up to Congress and the states. *Id.* at 103, 90 S.Ct. at 1907.

While *Williams* involved the right to trial by jury in a criminal case, the Court also addressed the issue under the Seventh Amendment's guarantee of trial by jury in civil cases. *See Colgrove,* 413 U.S. at 152–60, 93 S.Ct. at 2450–54. The Supreme Court, relying on its earlier decision in *Williams,* stated:

> In *Williams,* we rejected the notion that "the reliability of the jury as a factfinder ... [is] a function of its size," and nothing has been suggested to lead us to alter that conclusion. Accordingly, we think it cannot be said that 12 members is a substantive aspect of the right of trial by jury.

*Id.* at 157, 93 S.Ct. at 2453 (citations omitted). The Supreme Court concluded that a jury of six in a civil case satisfies the Seventh Amendment's guarantee of trial by jury. *Id.* at 160, 93 S.Ct. at 2454. In fact, the Supreme Court stated that much had been written since its decision in *Williams,* but nothing persuaded it to depart from its conclusion in *Williams* that there is no discernible difference between the results reached by the two different-sized juries. *Id.* at 158–59, 93 S.Ct. at 2453–54. In light of these decisions, it is difficult to conclude that Appellant's parental rights were erroneously deprived because six instead of twelve jurors heard her case.

Moreover, as stated above, the government's interest in reducing the number of jurors in certain civil trials is to reduce fiscal and administrative burdens. The fewer jurors who sit, the less money the county has to distribute either directly or

indirectly. It is obvious that the county has to pay fewer jurors a daily stipend for jury duty if the jury only consists of six members, but the administrative costs associated with guaranteeing a twelve-member jury in every case could become burdensome as well. After all, the increased number of people necessary to provide larger juries would require more parking, larger facilities, and perhaps more people to administer the system. In fact, the record in this case reveals that the courtroom in which Appellant's case was heard was only designed for six jurors. Therefore, if Appellant were guaranteed a twelve-member jury, then other facilities would have to have been made available and the courtroom in which her case was heard would have to be rebuilt or retrofitted. Furthermore, this statute takes into account the ability of small, rural, or less densely populated counties to provide enough people to serve on twelve-member juries in all cases.

Consequently, because the empaneling of a six-member jury does not affect the accuracy of the jury's determination of the fact issues relevant in Appellant's termination case, and because the governmental interests are better served by limiting the twelve-member juries to specific cases, we conclude that the government code's requirement that Appellant's termination case be heard by a six-member jury does not run afoul of the Due Process Clause of the Fourteenth Amendment and the Due Course of Law guarantee under Article I, Section 19. Appellant's first through third issues are overruled.

## IV. SUFFICIENCY OF THE EVIDENCE

 Appellant argues in her fourth issue that there is no evidence, or alternatively, insufficient evidence to support the jury's finding that she engaged in conduct that endangered the physical or emotional well-being of G.C. A motion for new trial is a prerequisite to complain on appeal that the evidence is factually insufficient to support a jury finding. Tex.R. Civ. P. 324(b)(2); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex.1991). A no evidence issue, on the other hand, is preserved through one of the following: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex.1992). TDPRS points out that Appellant failed to follow any of these procedures to preserve error and has, therefore, waived her complaints on appeal. We agree.

After reviewing the record, we can find no indication that Appellant fulfilled any of the prerequisites necessary to preserve error on her legal and factual sufficiency claims. Appellant did object to the charge on several bases related to the best interests of the child; however, she complains on appeal about the jury's finding that she engaged in conduct that endangered the physical or emotional well-being of G.C., which is a separate finding from the finding that termination is in the best-interest of the child. *See* Tex. Fam.Code Ann. § 161.001(1)(E), (2) (Vernon Supp.2002); *In re R.V., Jr.*, 977 S.W.2d 777, 780 (Tex. App.—Fort Worth 1998, no pet.) (requiring that Appellant's objection on appeal comport with his objections at trial). Because Appellant has failed to preserve error, we overrule her fourth issue.

## V. CONCLUSION

Having overruled Appellant's four issues on appeal, we affirm the trial court's judgment.