ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 28, 2007

Mr. Timothy A. Braaten
Executive Director
Texas Commission on Law Enforcement
    Officer Standards and Education
6330 U.S. Highway 290 East, Suite 200
Austin, Texas 78723

Opinion No. GA-0573

Re: Whether, in light of the equal protection
guarantees of the United States and Texas
constitutions, the Texas Municipal Police
Association, an entity credentialed by and under
contract with the Texas Commission on Law
Enforcement Officer Standards and Education to
provide continuing education to peace officers,
may reduce tuition for its members (RQ-0578-GA)

Dear Mr. Braaten:

The federal and state constitutions guarantee that the state generally will treat similarly
situated persons in an equal manner. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 3. On
behalf of the Texas Commission on Law Enforcement Officer Standards and Education (the
"Commission"), you ask whether, in light of these constitutional equal protection guarantees, the
Texas Municipal Police Association (the "TMPA"), which the Commission has credentialed and
contracted with to provide continuing education to peace officers, may charge reduced tuition to
TMPA members.[1] You also ask whether the Commission has "any obligation under state or federal
law to ensure that all [Commission-]approved training providers offer [Commission] courses at the
same across[-]the[-]board enrollment fees." Request Letter, *supra* note 1, at 2.

I.      Background

As you explain, every licensed peace officer must "complete at least 40 hours of continuing
education programs once every 24 months" to retain his or her license. TEX. OCC. CODE ANN.
§ 1701.351(a) (Vernon Supp. 2006); *see also id.* (authorizing the Commission to suspend the license
of a peace officer who fails to comply with the continuing-education requirement); *id.* § 1701.354(a)
(requiring deputy constables to receive training in civil process in certain circumstances); *id.*

---

[1]*See* Letter from Timothy A. Braaten, Executive Director, Texas Commission on Law Enforcement Officer
Standards and Education, to Honorable Greg Abbott, Attorney General of Texas, at 2 (Apr. 2, 2007) (on file with the
Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

§ 1701.3545(b) (requiring continuing education for constables).[2]  In addition, the Commission, in accordance with statutory requirements, requires the state, counties, special districts, or municipalities that appoint or employ peace officers to provide each peace officer with Commission-approved training relating to "civil rights, racial sensitivity, and cultural diversity," as well as, in certain circumstances, "child abuse or neglect, family violence, . . . sexual assault," and "sex offender characteristics." *Id.* § 1701.352(b)(2) (Vernon 2004); *see also* 37 TEX. ADMIN. CODE § 217.11(b), (c)(1) (2007) (Commission, Legislatively Required Continuing Education for Licensees).

To provide continuing education that is recognized by the Commission, a training provider must obtain a credential from the Commission. *See* TEX. OCC. CODE ANN. § 1701.352(a) (Vernon 2004) (requiring the Commission to "recognize, prepare, or administer continuing education programs"); *see also* 37 TEX. ADMIN. CODE § 215.1(a) (2007) (Commission, Licensing of Training Providers) (authorizing the Commission to credential three types of training providers); *id.* §§ 215.3, .5–.6 (2007) (Commission, Academy Licensing; Contractual Training; Academic Alternative Licensing) (providing specifically for credentialing each type of training provider).  You aver that many academies have been credentialed and that "[a]ll state-mandated training is available from multiple law enforcement academies and contract-training providers" and, with one exception, is available for free from a Commission-operated website.  Request Letter, *supra* note 1, at 1.  Your question centers on the practice of one credentialed training provider, the TMPA, which describes itself as a private entity "open to all Texas peace officers, reserve officers[,] and public safety employees."  TMPA, Texas' Oldest, Most Progressive, Full-Service Law Enforcement Association!, *available at* http://www.tmpa.org/about/ (last visited Sept. 27, 2007); *see* Request Letter, *supra* note 1, at 2.

In addition to having obtained a credential from the Commission, you imply that the TMPA provides education and training for peace officers "under a contract with the [C]ommission."  37 TEX. ADMIN. CODE § 211.1(a)(18) (2007) (Commission, Definitions); *see* Request Letter, *supra* note 1, at 2;[3] *see also* 37 TEX. ADMIN. CODE § 215.5(a) (2007) (Commission, Contractual Training) (authorizing the Commission to enter into a contract with "a law enforcement agency, a law enforcement association, or [an] alternative delivery trainer to conduct training for" licensed peace officers).

You explain that another membership organization, the Combined Law Enforcement Associations of Texas ("CLEAT"), has noted the TMPA's practice of discounting TMPA members' fees for continuing-education programs offered by the TMPA.  *See* Request Letter, *supra* note 1, at 2; *see also* TMPA, Events Calendar, *available at* http://www.tmpa.org/events/events.asp (last visited

---

[2]*But see* TEX. OCC. CODE ANN. § 1701.351(b) (Vernon Supp. 2006) (allowing the Commission to waive the continuing-education requirements); *id.* § 1701.351(c) (requiring the Commission to credit a peace officer who serves as a member of the United States military for at least twelve months or serves as an elected member of the Legislature).

[3]*Accord* Brief of Amicus Curiae Combined Law Enforcement Associations of Texas attached to Letter from Tom A. Stribling, Staff Attorney, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General of Texas, at 3 n.1, 9 (May 9, 2007) (on file with the Opinion Committee).

Sept. 27, 2007) (listing classes and fees, some of which provide discounts for TMPA members). As you state, contractual providers other than TMPA "charge different fees for the same training based upon membership" in the provider's organization or some other characteristic, but CLEAT argues that TMPA's practice implicates equal protection concerns. Request Letter, *supra* note 1, at 2. You summarize CLEAT's concern:

> CLEAT asserts that TMPA offers a "graduated fee scale for [Commission] training, permitting TMPA members to pay an enrollment fee lower than all other participants." . . . CLEAT complains that "[s]uch a discriminatory fee schedule contravenes the Equal Protection Clause of the United States and Texas Constitutions. Further, by sanctioning such a scheme, [the Commission] has unconstitutionally participated in the recruitment of members by a union/labor organization to the exclusion of any other union/labor organization."

*Id.* (quoting Letter from H.L. O'Neal, Corporate Counsel, CLEAT, to Timothy Braaten, Executive Director, Commission, at 2 (Jan. 18, 2007), attached to Request Letter). While the Commission is aware of the TMPA's practice, it does not believe the practice is unconstitutional. *See* Request Letter, *supra* note 1, at 2. You also imply that the Commission disagrees with CLEAT's assertion that "membership in a union/labor organization[] is a quasi-protected class" for constitutional purposes. *Id.*

## II.     Constitutional Equal Protection Guarantees

Having set out the relevant facts, we proceed to consider the questions you have posed. Your primary concern is whether the TMPA's tuition policy violates constitutional equal protection guarantees. *See id.*

The Fourteenth Amendment to the United States Constitution prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Article I, section 3 of the Texas Constitution similarly affirms that "[a]ll free men . . . have equal rights . . . ." TEX. CONST. art. I, § 3. Texas courts apply federal standards when determining whether a statute violates equal protection under either the federal or state provision. *See Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990); *In re G.C.*, 66 S.W.3d 517, 522 n.1 (Tex. App.—Fort Worth 2002, no pet.) (citing *Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1089 n.11 (5th Cir. 1992); *Rose*, 801 S.W.2d at 841; *Sanders v. Palunsky*, 36 S.W.3d 222, 224 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). Consequently, this opinion will analyze your question in terms of federal equal protection requirements.

Equal protection rights arise as the result of action by the state "or [by] one acting under the color of [state] authority." *United States v. Guest*, 383 U.S. 745, 755 (1966). The Fourteenth Amendment does not protect an individual against wrongs done by private entities unless the state has been involved to some degree. *See id.* at 755–56; *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163,

172 (1972).   Absent state action, therefore, TMPA's tuition policy does not implicate equal protection concerns.  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (stating that a court will find state action only if it finds a "close nexus between the State and the challenged action" (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974))).

Whether a private entity's action in a particular circumstance constitutes state action for purposes of the Fourteenth Amendment is a question requiring the "sifting [of] facts and weighing [of] circumstances." *Evans v. Newton*, 382 U.S. 296, 299–300 (1966) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)); *see Brentwood Academy*, 531 U.S. at 296 (noting that "a host of facts" can bear on the fairness of attributing state action to a private entity).  Because the Attorney General's opinion process is inappropriate for determining questions of fact and because a legal conclusion can be reached in this opinion without resolving the state action issue, we will assume for purposes of this opinion that the TMPA's policy constitutes state action.[4]  *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

This assumption does not resolve the issue because the TMPA's tuition policy violates the constitutional equal protection guarantee only if the policy bears no rational relationship to a legitimate state purpose.  While equal protection "demands" that the state treat "similarly situated persons . . . similarly under the law," that does not mean that the state may not adopt classifications "with resulting disadvantage to various groups or persons." *Sonnier v. Quarterman*, 476 F.3d 349, 367–68 (5th Cir. 2007) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982), quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).  A classification that targets a suspect class or impacts a fundamental right "will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Id.* at 368 (citing *Plyler*, 457 U.S. at 217–18).  On the other hand, a classification that "neither burdens a fundamental right nor targets a suspect class" will be upheld "so long as it bears a rational relation to some legitimate end." *Id.* (quoting *Romer*, 517 U.S. at 631); *see Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 & nn.3, 4 (1976); *see also Plyler*, 457 U.S. at 216 (stating that, under the rational-basis standard, a court seeks "only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose").

Union membership has not been named by a court as suspect class,[5] nor is union membership a fundamental right.[6]  Rather, courts have concluded that classifications based on union membership

---

[4]If the TMPA's tuition policy does not constitute state action, then it would not be evaluated under the Fourteenth Amendment to the United States Constitution.  *See Guest*, 383 U.S. at 755–56; *Moose Lodge No. 107*, 407 U.S. at 172.

[5]For cases finding a suspect class, see, e.g., *Graham v. Richardson*, 403 U.S. 365, 372 (1971) (alienage); *McLaughlin v. Fla.*, 379 U.S. 184, 191–92 (1964) (race); *Oyama v. Cal.*, 332 U.S. 633, 646 (1948) (ancestry) (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)).

[6]For cases finding a violation of fundamental rights, see, e.g., *Bullock v. Carter*, 405 U.S. 134, 142–43 (1972) (right to vote); *Shapiro v. Thompson*, 394 U.S. 618, 629–30 (1969) (right of interstate travel), *overruled in part on other grounds, Edelman v. Jordan*, 415 U.S. 651 (1974); *Williams v. Rhodes*, 393 U.S. 23, 30–31 (1968) (rights guaranteed by the First Amendment) (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).

"must meet only [the] relatively relaxed" standard of reasonableness to survive constitutional scrutiny. *City of Charlotte v. Local 660, Int'l Ass'n of Firefighters*, 426 U.S. 283, 286 (1976); *accord Bond v. Bd. of Educ.*, 1999 WL 151702, \*4 (E.D.N.Y. 1999) (citing *City of Charlotte*, 426 U.S. at 286); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (citing *Hoke Co. v. Tenn. Valley Auth.*, 854 F.2d 820, 828 (6th Cir. 1988)).

In this instance, a court probably would find that this particular classification rationally relates to a legitimate state purpose. The continuing-education requirements that the Legislature has adopted ensure that peace officers will be up-to-date on changes in the law and practice with respect to highly sensitive and challenging subjects—civil rights, racial sensitivity, cultural diversity, child abuse or neglect, family violence, sexual assault, and sex-offender characteristics. *See* TEX. OCC. CODE ANN. § 1701.352(b)(2) (Vernon 2004); *see also* 37 TEX. ADMIN. CODE § 217.11(b), (c)(1) (2007) (Commission, Legislatively Required Continuing Education for Licensees). The Legislature has specifically found that standardizing peace officer training serves a state purpose. *See, e.g.*, Act of May 28, 1965, 59th Leg., R.S., ch. 546, §§ 2, 6, 11, 1965 Tex. Gen. Laws 1158, 1158–60 (finding, apparently in connection with a rising crime rate, a need to study means of peace officer training); Act of May 8, 1969, 61st Leg., R.S., ch. 323, §§ 1, 4, 7, 1969 Tex. Gen. Laws 998, 998–99, 1001, 1002 (same). In addition, allowing various credentialed and contractual providers to offer the training serves the purpose of increasing the ease with which peace officers may comply with the statutory continuing-education requirements. And in any event, individuals who are not TMPA members can, with one exception, obtain all of the required training for free from a Commission-operated website. *See* Request Letter, *supra* note 1, at 1; *cf. Carnivale v. State of N.Y.*, 822 N.Y.S.2d 267, 268 (N.Y. App. Div. 2006) (rejecting the plaintiff's claim that state continuing-education requirements for architects "force him to take classes sponsored by the American Institute of Architects" and violates constitutional equal-protection guarantees because (1) three other sponsors of continuing education have been approved and (2) it is rational for the state to authorize "the largest professional organization of architects in the state . . . to sponsor an extensive schedule of continuing education courses"). Because the classification can be found to rationally relate to a legitimate state purpose, the TMPA may charge its members a reduced tuition without violating constitutional equal protection guarantees.

You also ask whether the Commission is obligated "to ensure that all [C]ommission[-] approved training providers offer [Commission] courses at the same across[-]the[-]board enrollment fees." Request Letter, *supra* note 1, at 2. We limit our answer to the TMPA's policy.

Assuming that the TMPA's policy constitutes state action, and having concluded that the TMPA's tuition policy rationally relates to a legitimate state purpose, the Commission need not require the TMPA to revise its tuition policy.

## S U M M A R Y

A policy under which the Texas Municipal Police Association reduces the tuition for required continuing education charged to Association members is rationally related to a legitimate state purpose. The TMPA therefore may charge its members a reduced tuition without contravening constitutional equal protection guarantees, and the Texas Commission on Law Enforcement Officer Standards and Education need not require the TMPA to revise its policy.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee