**CLEAR LAKE CITY WATER AUTHORITY, Appellant,**

v.

**Dr. Eugene WINOGRAD, Trustee, Appellee.**

**No. 01–84–0810–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 13, 1985.

Rehearing Denied July 25, 1985.

See also 678 S.W.2d 740.

Jeffrey W. Hurt and Therese Ruffing, Leonard, Koehn & Hurt, Bellaire, for appellant.

J. Douglas Sutter, Charles W. Kelly and James E. Ross, Ross, Griggs & Harrison, Houston, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a permanent injunction, mandating that Clear Lake City Water Authority furnish water and sewage service to certain land within its jurisdiction owned by the appellee, Dr. Eugene Winograd, trustee. We affirm.

This case was tried before a jury, and two special issues were submitted:

SPECIAL ISSUE ONE

Equal protection of the laws requires that the government base any differences in treatment of applicants on rational criteria that are reasonably related to a legitimate function of that particular governmental unit.

This would prohibit the application of otherwise proper standards if they are not customarily applied in the same fashion to all similar applicants.

Although mere mistakes or errors of judgment are not a denial of equal protection of the laws, if you find (1) that the acts of the government are motivated by ill will or (2) that there is a pervasive pattern of obstruction, misrepresentation, and hostility toward a party, then you may find a denial of equal protection.

Do you find that Clear Lake failed to afford Winograd equal protection of the laws?

SPECIAL ISSUE TWO

Do you find that the differential treatment, if any, resulted in the denial of Winograd's application?

The jury answered the first issue affirmatively and the second issue negatively. After reviewing the record, we conclude that the trial court's judgment was based not only upon the jury's response to the first special issue, but upon additional

grounds, which are also presented for our review. A procedural history of the case will help to explain the dispositive issues of the appeal.

Dr. Winograd initially filed these proceedings as a bill of discovery action. In his original petition, filed on August 20, 1982, he alleged that the Water Authority had previously refused to honor its commitment to provide available water and sewage service for the planned development of his acreage in the Clear Lake City area. He stated that he contemplated submitting an application for one phase of this development in the near future, but was reluctant to do so after the Water Authority's previous discriminatory action and because the cost of preparing the application would exceed $130,000. In his petition, Dr. Winograd asked that the Water Authority be required to document specifically its precise standards and policies for granting water and sewage service to applicants and also that it be required to answer written interrogatories and to submit to oral deposition. In September 1982, the Water Authority filed a special exception and plea in abatement to the original petition, along with its original answer. In October 1982, Dr. Winograd filed one written interrogatory with various subparagraphs, and also a notice to take the deposition of a Water Authority representative, to which request the Water Authority objected.

Upon motion of the Water Authority, the trial court directed that the oral deposition not be taken at that time, but it ordered the Water Authority to answer Dr. Winograd's written interrogatory prior to November 1, 1982. The Water Authority responded to this interrogatory by submitting certain pages from its development policy manual, bearing numbers DEV–10 through DEV–50, which supposedly set forth the criteria it used to determine whether sewer services would be granted to a multi-family residential development or to a commercial office building. The Water Authority, however, refused to answer any of the interrogatory's subparagraphs, objecting that these additional questions violated the terms of the protective order that authoriz-

ed Dr. Winograd to pose a single interrogatory. The court overruled this objection and ordered the Water Authority to fully answer the interrogatory.

In January 1983, the Water Authority filed a second answer to Dr. Winograd's interrogatory. The first two subparts of the interrogatory read as follows:

1. Please state with precision the criteria currently used by the Clear Lake City Water Authority in determining whether sewer services will be granted to a multi-family residential development and/or a commercial office building.

(a) If any of the criteria set forth above are memoralized [sic] in writing, please attach true and correct copies thereof to your answers to these interrogatories.

(b) If any of the criteria set forth above are not memoralized [sic] in writing, please describe said criteria in detail. Be as precise as you ever intend to be.

The Water Authority responded to these two subparts merely by referring to the documents attached to its original response, and by further stating that all criteria had been memorialized in writing.

The third subpart of the interrogatory read:

(c) Are there any present plans to amend, modify, or otherwise revise the criteria set forth above within the next three months? If so, please describe the proposed amendment, modification or revision in full and complete detail.

In answer to this subpart, the Water Authority stated that although the board of directors had generally discussed amending its criteria, there was, at that time, no specific proposed amendment, modification, or revision under consideration. It also represented that Dr. Winograd could have access to the tapes of any relevant meetings.

The fourth subpart asked:

(d) If a commercial developer applying for sewage services for the types of projects described above meets the criteria specified above, is there any basis

upon which his application could be denied? If so, describe the basis or bases.

In response to this subpart, the Water Authority asserted that the bases for denying an application for service included the "full range" of its legislative discretion, as related to the merits of each application. It asserted, by way of example, that an application that presented special floodwater or sewage problems might be denied.

The fifth subpart inquired:

(e) Has any developer submitted an application for sewage services which met the criteria set forth above, and which such [sic] application was rejected, within the last twelve (12) months?

(1) If so, please identify the developer and the project.

(2) State the reason or reasons that the application was denied.

The Water Authority responded negatively to this subpart and indicated that it was therefore unnecessary to answer questions (e)(1) and (e)(2).

Finally, the interrogatory asked:

(f) Is there in effect at the present time, or is there contemplated within the next twelve months, a moratorium on the granting of sewage services to property within the jurisdiction of the Clear Lake City Water Authority? If so, please state the content of the moratorium and its effective date?

In response to this subpart, the Water Authority referred to documents attached to its answer.

In September 1983, Dr. Winograd moved for sanctions, alleging that he had relied on the Water Authority's answer to his interrogatory and that he had constructed a proposal for development, seeking sewer services, and had expended funds for planning and development at a total cost of $130,000. He asserted that when he presented his proposal to the Water Authority, his application was denied on the basis of noncompliance with two developmental policies that the Water Authority had never included in its answers to his interrogatory. He prayed for his costs, for reasonable attorney's fees, and for general relief.

In November 1983, the trial court signed two orders that granted Dr. Winograd's motions for sanctions, finding that the Water Authority had filed a misleading original answer to the interrogatory and that it had failed to amend its answer at the time it knew the answer to be false. As a sanction, the court ordered the Water Authority to pay $7,500 to Dr. Winograd and directed Dr. Winograd to pursue any further inquiry he might desire.

In January 1984, Dr. Winograd filed his first amended original petition, seeking a mandatory injunction ordering the Water Authority to provide water and sewage service to his tract of land. The petition alleged that he had prepared an application that met each and every standard set forth in the Water Authority's response to his written interrogatory; that he had spent in excess of $100,000 in preparing his application; and that the Water Authority had refused to approve his application, solely on the basis of two development policies it had not disclosed in its answers to his interrogatory, to-wit:

(1) an alleged policy based upon a requirement of the Environmental Protection Agency that sewage service not be furnished to buildings within the 100-year floodplain, and

(2) an alleged policy precluding construction of any multi-family housing that would violate a designated ratio of single-family housing to multi-family housing in the Clear Lake City area.

Dr. Winograd asserted that the Water Authority's refusal to grant his application for service was arbitrary, capricious, and irrational, entitling him to injunctive relief.

In January 1984, the Water Authority finally supplemented its answers to the written interrogatory, attaching another page from its policy manual, DEV–60 as revised, which set forth the two additional criteria for allocation of available sewage treatment capacity. The date of issuance of DEV–60 is shown as February 17, 1983.

The court called the case for trial in July 1984, at which time it submitted two special issues to the jury. The court instructed the jury that a party had a continuing legal duty to supplement or modify its answers to interrogatories in order to make them speak the truth; that any evidence regarding the restrictions of the Environmental Protection Agency had been admitted solely for the purpose of showing the knowledge and procedures of the Water Authority; and that the court had determined that the single-family to multiple-family housing ratio was not a legal restriction on the Water Authority's ability to approve Dr. Winograd's application. As stated above, the jury found in response to the first special issue that the Water Authority had failed to afford Dr. Winograd equal protection of the law, but it failed to find in response to Special Issue No. 2 that the Water Authority's "differential treatment" of Dr. Winograd had resulted in the denial of his application.

The trial court granted a permanent injunction on September 10, 1984, stating as its reasons that: (A) there existed a violation of the due process rights guaranteed to Dr. Winograd by state and federal constitutions for which equitable relief was the only relief possible; (B) there was a palpable risk of the recurrence of the deprivation of Dr. Winograd's rights; (C) the Water Authority would continue to attempt to frustrate the court's judgment, no matter how well the court detailed the proper procedures and identified the lawful requirements to be followed; (D) the value of Dr. Winograd's property and its development were unique, preventing a reliable method of ascertaining pecuniary loss; (E, F, and G) the interests of the third parties affected by this suit would not be harmed by the grant of injunctive relief; any expense and inconvenience to the Water Authority were the direct and natural consequences of its own unlawful acts and were necessary to prevent the burden of the Water Authority's abuse of authority from falling on Dr. Winograd; (H) the Water Authority had demonstrated its recalcitrance; and (I) the protection afforded by a mandatory injunc-

tion was significant for the preservation of the integrity of land titles and the economic interests they represented in the face of illegal regulation.

■ The trial court made no findings of fact and conclusions of law, and under the procedures followed in this case, none were appropriate. Tex.R.Civ.P. 296; *see Ditto v. Ditto Investment Co.*, 158 Tex. 104, 106, 309 S.W.2d 219, 220 (1958). However, the transcript does contain the trial court's "Memorandum of Rendition," in which the trial judge set forth the reasoning of his decision. We have considered this memorandum, together with the court's charge and the recitations in its final judgment, for the sole purpose of determining the theories upon which the trial court decided to enter judgment in favor of Dr. Winograd. *See McCollum v. Red River Valley Publishing Co.*, 352 S.W.2d 144, 145 (Tex. Civ.App.—Amarillo 1961, writ ref'd n.r.e.).

When so considered, it is reasonably clear that the trial court determined that Dr. Winograd had the right to the information sought in his bill of discovery; that the Water Authority failed to perform its duty to seasonably supplement its answers to Dr. Winograd's written interrogatory; that Dr. Winograd, with the Water Authority's approval and active participation, spent a considerable sum or money in compiling his application and in preparation for the development of his land; and that the Water Authority's refusal to grant Dr. Winograd's application was arbitrary and denied Dr. Winograd due process or law. The trial court further concluded that Special Issue No. 2 was not an ultimate issue in the case, so that the jury's failure to answer the issue in favor of Dr. Winograd did not entitle the Water Authority to judgment.

We now proceed to the issues raised by this appeal. In its first three points of error, the Water Authority contends that the trial court erred in disregarding Special Issue No. 2, because it was a material issue, because there was evidence to support the jury's finding, and because Dr.

Winograd did not file a motion for judgment notwithstanding the verdict under Texas Rule of Civil Procedure 301.

A trial court, on its own motion, may disregard a jury finding on a special issue that is immaterial. *Young v. Kilroy Oil Co.*, 673 S.W.2d 236, 247 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Scott v. King*, 647 S.W.2d 394, 396 (Tex. App.—Dallas 1983, no writ). In such circumstances, the court's judgment rendered upon the remaining findings is not considered to be a judgment notwithstanding the verdict. *Southern Pacific Transportation Co. v. Allen*, 525 S.W.2d 300, 305 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ).

An ultimate fact issue is one that is essential to the right of action. *Wichita Falls & Oklahoma Railway Co. v. Pepper*, 134 Tex. 360, 371, 135 S.W.2d 79, 84 (1940). Such an issue seeks a fact that would have a direct effect upon the judgment. *Amoco Production Co. v. Thompson*, 657 S.W.2d 824, 829 (Tex.App.—Corpus Christi), *rev'd on other grounds sub nom. Ideal Lease Service, Inc. v. Amoco Production Co.*, 662 S.W.2d 951 (Tex.1983). In contrast, an evidentiary issue is one that the jury may consider in deciding the controlling issue, but that is not a controlling issue itself. *Sell v. C.B. Smith Volkswagen, Inc.*, 611 S.W.2d 897, 903 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). If the court submits an evidentiary issue to the jury, it may later properly disregard that issue as being immaterial to its decision. *Neuhaus v. Kain*, 557 S.W.2d 125, 135 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

The jury's finding, in response to Special Issue No. 1, that Dr. Winograd was denied equal protection of the law by the Water Authority, was an ultimate, controlling issue in this case. That finding, alone, constituted a legal basis for the court's conclusion that the Water Authority acted arbitrarily in refusing to grant Dr. Winograd's application. In context, Special Issue No. 2 was merely evidentiary, and the trial court was authorized to disregard the jury's finding on that issue on its own motion. *See Scott*, 647 S.W.2d at 396. Therefore, the jury's failure to respond affirmatively to the second special issue did not preclude Dr. Winograd from being entitled to judgment based upon the jury's answer to the first special issue.

There is an additional basis for affirming the trial court's judgment. At the time Dr. Winograd submitted his written interrogatory to the Water Authority, the applicable rule of discovery was Tex.R.Civ.P. 168(7), now rule 166b(5). This rule required a party to seasonably amend his answers to interrogatories if it obtained information upon the basis of which it knew that its prior answer was incorrect when made, or even if then correct, was no longer true, so that its failure to amend would, in substance, constitute a knowing concealment or misrepresentation under the circumstances. This provision remained in effect at all material times, including the date, January 31, 1984, that the Water Authority finally filed a supplementation to its answer that contained the disputed additional criteria.

In November 1983, the court considered and granted Dr. Winograd's motion for sanctions, because the Water Authority had not supplemented its prior answers to the interrogatory to include the two additional criteria upon which it refused Dr. Winograd's application. At that time, even though the court imposed only monetary sanctions, it expressly determined that the Water Authority had misled Dr. Winograd by its original answer to his interrogatory and by its failure to amend its answers when it knew the answers to be false.

At the time of trial in July and August 1984, the court had judicially determined that the Water Authority's failure to seasonably amend its answers to the interrogatory was not based on any good cause. At that time, Tex.R.Civ.P. 215(5), which became effective April 1, 1984, specifically provided that a party "*shall* not be entitled to present evidence which the party was under a duty to provide in a supplemental

response ... unless the trial court finds that good cause sufficient to require admission exists." (Emphasis added.) The court acted entirely within its discretion in refusing to consider the Water Authority's contentions based on the two omitted criteria. *See Jarrett v. Warhola,* 28 Tex.Sup. Ct.J. 415 (May 18, 1985); *Southern Pacific Transportation Co. v. Evans,* 590 S.W.2d 515, 518–19 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

■ We are required to consider the entire discovery process in determining whether the trial court's imposed sanctions constitute an abuse of its discretion, and having done so, we overrule the Water Authority's contention in points of error 20 through 23 that the sanctions constituted an abuse of discretion. *See Bass v. Duffey,* 620 S.W.2d 847, 849 (Tex.Civ.App.— Houston [14th Dist.] 1981, no writ).

■ Trial courts are empowered to impose severe sanctions to prevent loss to an innocent party who has justifiably relied to his detriment upon the sworn answers of the opposing party. In this respect, the principles underlying the discovery rules are essentially the same as those applicable to the doctrine of judicial estoppel. It has long been settled that when one party has taken a sworn position in a judicial proceeding, he may not later take a contrary position, in the absence of proof that his prior statement was made inadvertently or by some mistake or fraud. *See Long v. Knox,* 155 Tex. 581, 585, 291 S.W.2d 292, 295 (1956).

■ Although the Water Authority argues to the contrary, we also find the doctrine of estoppel generally to be applicable to its actions in this case. *See, e.g., City of Corpus Christi v. Gregg,* 155 Tex. 537, 542–44, 289 S.W.2d 746, 750–51 (1956); *Hidalgo County Water Improvement District No. Two v. Dean,* 366 S.W.2d 703 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.); *see also City of Evansville v. Gaseteria, Inc.,* 51 F.2d 232 (7th Cir.1931).

As a rule, the doctrine of estoppel does not apply against a unit of government in the exercise of public or governmental functions. *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970). But the courts have repeatedly acknowledged that an exception to this rule exists, and a municipal or quasi-municipal corporation may be estopped, where justice, honesty, and fair dealing require it. *See Roberts v. Haltom City,* 543 S.W.2d 75, 78–81 (Tex.1976); *City of Hutchins,* 450 S.W.2d at 836; *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887, 896 (Tex.App. —Austin 1981, writ ref'd n.r.e.); *City of Dallas v. Rosenthal,* 239 S.W.2d 636, 645– 46 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.).

■ We hold that the trial court did not abuse its discretion in deciding that the Water Authority should not be permitted to rely upon the criteria omitted from its sworn interrogatory answers as a basis for its refusal to grant Dr. Winograd's application. We also hold that the court did not abuse its discretion in determining that, absent reasonable justification, the Water Authority's action was arbitrary and capricious. We overrule the first three points of error. We also overrule points four through six, in which the Water Authority challenges the sufficiency of the evidence to support the trial court's determination of the issues discussed above. We overrule points seven through eleven, which challenge the trial court's alleged "voiding" of the omitted development policies as illegal. Additionally, we overrule points 18 and 19. In point 18, the Water Authority contends that the jury should not have been instructed on a continuing duty to supplement answers to interrogatories. In point 19, the appellant argues that its special issues on whether its failure to grant the application was an abuse of discretion should have been submitted to the jury.

In points of error 20 through 23, the Water Authority attacks the trial court's award of monetary sanctions to Dr. Winograd for its abuse of the discovery process. First, the Water Authority contends that

its reference to its own public records in its interrogatory answer sufficiently complied with the discovery rules, and because Dr. Winograd did not examine those records, he could not complain that he was misled by the Water Authority's failure to seasonably supplement its answer with the disputed criteria. Next, the Water Authority claims that there was insufficient evidence for the court's finding that its original interrogatory answers were misleading. The Water Authority also asserts that Dr. Winograd's bill of discovery action was a mere fishing expedition and further, that it had no duty to amend its answer until 14 days before trial.

 Texas Rule of Civil Procedure 168(2) allows a party responding to an interrogatory to refer to a public record for the desired information. But the rule expressly requires that this reference include "sufficient detail to permit the interrogating party to locate and to identify *as readily as can the party served,* the records from which the answers may be ascertained." (Emphasis added.) The Water Authority's answer misrepresented that no specific change in the criteria was being considered at the time, and its vague reference to "any relevant tapes" did not meet its minimum burden under rule 168 or otherwise provide Dr. Winograd with adequate notice of the information later used to deny his application.

 The two requirements the Water Authority used to deny Dr. Winograd's application were part of its development policy DEV–60, which it formally issued a month after answering the written interrogatory. The Water Authority did not amend its answers to include those particular requirements until after it had denied Dr. Winograd's application and after it had been fined for discovery abuse. There was sufficient evidence to justify the trial court's conclusion that the Water Authority knew at the time it answered the interrogatory that its stated standards were incomplete and that its board of directors considered the housing ratio and the floodplain restrictions to be de facto policies and an-

ticipated that they would become official policies in the near future. Although the disputed requirements may not have been officially adopted until after the Water Authority answered the interrogatory, the record supports the trial court's determination that the Water Authority considered those policies to be significant in evaluating applications for service at the time it answered the interrogatory. Furthermore, the Water Authority certainly knew in February 1983, when it issued DEV–60, that its answer, even if initially correct, was no longer true, and it denied Dr. Winograd's application in September 1983, without having amended its answer.

The trial court awarded sanctions because of the Water Authority's misleading original answer to interrogatories and its failure to amend its answer at the time it knew the answer to be false. The trial court could reasonably have decided that the Water Authority's failure to amend was in substance a knowing concealment or misrepresentation, and it did not abuse its broad discretion in determining appropriate discovery sanctions.

 The jury considered only the equal protection issue in this case. The inclusion in the court's charge of the instruction on a party's duty to supplement its answer thus related to the equal protection issue and, even if error, did not constitute reversible error. *See Barnhouse Motors, Inc. v. Godfrey,* 577 S.W.2d 378, 381 (Tex.Civ.App.—El Paso 1979, no writ.).

 The Water Authority also contends that the award of discovery sanctions was improper, because Dr. Winograd abused the bill of discovery process by using it as a mere fishing expedition. A bill of discovery action is a proper means for determining facts within the knowledge of the adversary that will aid a pending or contemplated suit. *Dallas Joint Stock Land Bank v. State ex rel. Cobb,* 135 Tex. 25, 27–30, 137 S.W.2d 993, 994–95 (1940). In such an action, the plaintiff need only show that there is a reasonable basis for his

belief that a cause of action exists in his favor. 135 Tex. at 30, 137 S.W.2d at 995.

■ Dr. Winograd's bill of discovery petition alleged that the Water Authority had previously denied him sewage service wrongfully, for arbitrary and discriminatory reasons. He alleged that he was considering filing a new application and was seeking to discover the precise standards used by the Water Authority to evaluate such applications. He required the requested information to determine whether to submit a new application in compliance with those standards or whether to challenge the standards as illegal. The petition indicated a possible due process cause of action for the arbitrary and capricious denial of a benefit by a governmental or quasi-governmental body. The bill of discovery was not a mere fishing expedition, and the trial court did not abuse its discretion in imposing sanctions for the Water Authority's abuse of the discovery process. We overrule points of error 20 through 23.

■ In points of error 14 and 15, the Water Authority complains of the trial court's exclusion of certain testimony relating to the Water Authority's two additional criteria, the single-family to multiple-family housing ratio and the restrictions on building in the 100-year floodplain, set forth in its development policy DEV–60. The excluded testimony had little, if any, bearing upon the trial court's determination of an equal protection violation, and any error in its exclusion was harmless in light of the alternative basis for the judgment relating to the Water Authority's failure to comply with the discovery process. Points of error 14 and 15 are overruled.

■ In points of error 16 and 17, the Water Authority argues that Special Issue No. 1 was defective, because it improperly allocated the burden of persuasion on the issue of equal protection, and it did not include the required element of discriminatory intent.

Contrary to the Water Authority's argument, the court's charge properly placed the burden of proof upon Dr. Winograd to show by a preponderance of the evidence that the Water Authority failed to afford him equal protection of the law. The issue assumed that the Water Authority's criteria were proper under the law, and it raised only the question of whether the Water Authority had applied its standards in a manner that denied Dr. Winograd equal protection. The court's charge instructed the jury that in order to constitute a denial of equal protection, the government's acts had to be motivated by ill-will or had to demonstrate a pervasive pattern of obstruction, misrepresentation, and hostility toward a party. Additionally, the court admonished the jury that mere mistakes or errors of judgment were not a denial of equal protection. These instructions adequately charged the jury on the element of discriminatory intent. *See Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Points of error 16 and 17 are overruled.

Finally, the Water Authority contends in its 12th and 13th points of error that the language of the injunction was overly broad in part and overly specific in part. The injunction prohibited the Water Authority from imposing any variation of the disputed housing ratio or of the floodplain restriction until it lawfully adopted a clear, comprehensive floodway plan.

■ Where the exercise of discretionary power is shown to be arbitrary and capricious or otherwise illegal, a court may require by mandatory injunction that affirmative action be taken to correct the abuse. *See Inverness Forest Improvement District v. Hardy Street Investors*, 541 S.W.2d 454, 461 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Contrary to the Water Authority's assertion, the injunction does not *order* it to adopt a comprehensive floodway plan. Rather, the order prohibits the Water Authority from imposing floodway restrictions until it adopts a plan that clearly enumerates floodway requirements and provides reasonable notice to those potentially affected by the restrictions. The injunction merely ensures procedural fairness by the Water

Authority in its imposition of floodway requirements. It does not preempt the Water Authority's legislative discretion to formulate the substantive matters to be contained in the comprehensive plan.

Additionally, the injunction itself explains that the Water Authority had demonstrated its recalcitrance, was fined for its abuse of the discovery process, was held in contempt of court for violating the temporary injunction imposed against it, and would not be easily deterred from attempting to frustrate the court's judgment. Given the "palpable risk of the recurrence of the deprivation" of Dr. Winograd's rights, the trial court did not err in expressly prohibiting the Water Authority from imposing any variation of its housing ratio or from imposing floodway restrictions until it had adopted a comprehensive floodway plan.

The Water Authority also asserts that the injunction fails to describe in reasonable detail the property subject to its terms and the acts to be enjoined. This contention is without merit. The injunction requires the Water Authority to allocate sewage capacity as requested in Dr. Winograd's application and specifies:

> The land to be served is a 9.9-acre tract out of the easternmost portion of a 19.74-acre tract out of the 65.1271-acre tract in the Sarah Deel Survey, Abstract 13, Harris County, Texas, being north of El Camino Village Drive, northwest of El Camino Village Apartments, Phase Two, and west northwest of Harris County Flood Control District Easement E–571138.

This description is adequate to enable the Water Authority to find Dr. Winograd's tract. In addition to the abstract and the survey details, the other points of reference sufficiently direct the Water Authority to the location of the tract to be served. As Dr. Winograd points out, the Water Authority knew the location of the tract well enough to deny it water and sewage service, because it was allegedly situated in the 100-year floodplain. The Water Authority cannot now reasonably complain that it is unable to find the tract that is subject to the injunction.

Neither is the description of the acts to be enjoined impermissibly vague, as the Water Authority contends. Although the injunction does make reference to Dr. Winograd's application for water and sewer service, *see* Tex.R.Civ.P. 683, it also otherwise describes the acts enjoined clearly and in reasonable detail, and it is certainly capable of reasonable construction and good faith obedience. *See Scott v. Williams*, 607 S.W.2d 267, 271 (Tex.Civ.App.— Texarkana 1980, writ ref'd n.r.e.). The language sufficiently informs the Water Authority of the acts it is prohibited from doing as well as those it is required to do, without requiring inferences about which reasonable minds might differ. *Id.* The 12th and 13th points are overruled.

The judgment of the trial court is affirmed.