In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00130-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


SHANNON WAYNETTE EDWARDS AND


ALAN RANDALL EDWARDS, AND

IN THE INTEREST OF CASEY ALAN EDWARDS

AND BRITTANY NICOLE EDWARDS,

MINOR CHILDREN




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 99D0775-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Shannon Edwards appeals the trial court's judgment granting her divorce from Alan Edwards
and naming Alan the sole managing conservator of their son, Casey, age seven, and their daughter,
Brittany, age six. Shannon filed a petition for divorce requesting the trial court to make certain
temporary orders, requesting she be appointed sole managing conservator, alleging Alan engaged
in domestic violence against her, and requesting a protective order. 

 The trial court issued an ex parte protective order, see Tex. Fam. Code Ann. §§ 83.001-83.007 (Vernon Supp. 2002), and ordered Alan to appear for a hearing on whether it should issue
a protective order. After that hearing, the trial court signed an agreed order regarding temporary
possession of and access to the children and the preservation of the community estate, and enjoining
each party from threatening, harassing, or physically abusing the other party or the children. The trial
court signed a similar agreed order after another hearing conducted about a week later. 

 About three months later, the trial court conducted the final divorce hearing at a bench trial. 
The trial court named Alan sole managing conservator and named Shannon possessory conservator. 
The trial court also named a receiver to liquidate the community estate and pay the community debts. 
Finally, the trial court granted Shannon's request for a permanent injunction and a protective order. 
These orders were incorporated into the final divorce decree, which the trial court signed about seven
months after trial. 

 At Shannon's request, the trial court issued Findings of Fact and Conclusions of Law. The
trial court's specific findings of fact were as follows: 

 1. Petitioner and Respondent were married on or about December 15,
1990 and separated on or about June 3, 1999.


 2. Prior to filing the action for divorce, Petitioner had been a resident of
Bowie County, Texas for a period in excess of one (1) year.


 3. Two (2) children were born of the marriage.


 . . . .


 4. The parties accumulated certain property during their marriage, and
had other property prior to their marriage.


 5. The parties accumulated certain debts during their marriage.


Among the trial court's conclusions of law were the following:

 3. Respondent is named Sole Managing Conservator of the parties [sic]
minor children and Petitioner is named Possessory Conservator, subject to standard
visitation. Such disposition is in the best interest of the children.


 4. Petitioner is to pay child support in the amount of $50.00 per week,
and to purchase and maintain health insurance on the minor children.


 . . . .


 7. The remainder of the community property together with the
community real property . . . [is] to be delivered by the parties to [the receiver
appointed by the court].


 8. The Receiver shall offer and sell such property to the highest bidder
at auction; the proceeds, after expenses, shall be applied to the community debt
herein. Any excess funds remaining shall be divided equally between the parties.


 Shannon made a timely Request for Additional or Amended Findings of Fact and
Conclusions of Law. The trial court denied her request. Shannon also filed a Motion for New Trial,
which was overruled by operation of law.

 On appeal, Shannon raises sixteen issues in which she challenges (1) the trial court's Findings
of Fact and Conclusions of Law, (2) the trial court's naming of Alan as sole managing conservator,
(3) the trial court's appointment of a receiver, (4) the trial court's inclusion of the protective order in
the divorce decree, and (5) the trial court's failure to grant her Motion for New Trial.

 Because most of Shannon's issues on appeal revolve around the adequacy of the trial court's
Findings of Fact and Conclusions of Law, we begin with an outline of the law governing the issuance
and review of a trial court's findings. In any case tried without a jury in a district court, any party
may request the trial court to state in writing its findings of fact and conclusions of law. Tex. R. Civ.
P. 296. The trial court must file its findings of fact and conclusions of law within twenty days after
a timely request is filed. Tex. R. Civ. P. 297. After the trial court files original findings of fact and
conclusions of law, any party may file a request for specified additional or amended findings or
conclusions. Tex. R. Civ. P. 298. The trial court must file any appropriate additional or amended
findings and conclusions within ten days after such request is filed. Id.

 No findings or conclusions shall be deemed or presumed by any failure of the trial court to
make any additional findings or conclusions. Id. "When findings of fact are filed by the trial court
they shall form the basis of the judgment upon all grounds of recovery and of defense embraced
therein." Tex. R. Civ. P. 299. On appeal, the judgment may not be supported by a presumed finding
on any ground of recovery or defense, no element of which has been included in the findings of fact. 
Id. But when the trial court has found one or more elements of a ground of recovery or defense, a
court of appeals must presume omitted, unrequested elements in support of the judgment. Id.

 As a general rule, the trial court's duty to file findings of fact and conclusions of law after a
bench trial is mandatory. Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989). 
However, the trial court need only enter findings, or additional findings, on ultimate or controlling
issues, rather than on mere evidentiary issues. See Lifshutz v. Lifshutz, 61 S.W.3d 511, 515 (Tex.
App.-San Antonio 2001, pet. denied); Hill v. Hill, 971 S.W.2d 153, 155 (Tex. App.-Amarillo 1998,
no pet.); Gutierrez v. Gutierrez, 791 S.W.2d 659, 667 (Tex. App.-San Antonio 1990, no writ). The
trial court is also not required to make additional findings that are unsupported in the record or that
are contrary to other previous findings. Grossnickle v. Grossnickle, 935 S.W.2d 830, 838 (Tex.
App.-Texarkana 1996, writ denied).

 An ultimate fact issue is one that is essential to the cause of action and seeks a fact that would
have a direct effect on the judgment. Clear Lake City Water Auth. v. Winograd, 695 S.W.2d 632,
639 (Tex. App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). In contrast, an evidentiary issue is one
the trial court may consider in deciding the controlling issue, but is not a controlling issue itself. See
id.

 When a party makes a proper and timely request for findings and the trial court fails to
comply, harm to the complaining party is presumed unless the contrary appears on the face of the
record. Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996). Error is harmful if it prevents an
appellant from properly presenting a case on appeal. Id. Harm often occurs in factually complicated
cases in which there are two or more possible grounds for recovery or defense. See Fraser v.
Goldberg, 552 S.W.2d 592, 594 (Tex. Civ. App.-Beaumont 1977, writ ref'd n.r.e.). Harm occurs
when the testimonies of two witnesses were in conflict on material issues of fact and would support
different conclusions of law. See Kermit Wholesale Lumber Co. v. Stanfield, 373 S.W.2d 365, 366
(Tex. Civ. App.-Eastland 1963, no writ).

Receivership

 Shannon contends the trial court erred in failing and refusing to provide any findings of fact
regarding its order of a receivership and that such failure deprived her of findings of fact necessary
to prepare an appeal of the order. She also contends the trial court abused its discretion in ordering
the appointment of a receiver to dispose of the community property and pay the community debts.

 The record shows neither party pleaded for the appointment of a receiver. The record also
reveals the following discussions:

 THE COURT: What property? Is there any issue on separate
property?


 [Plaintiff's Attorney]: Yes, sir, there is.


 [Defendant's Attorney]: No, no, not really. We had kind of always
agreed - there's a mobile home and ten acres, a mobile home on five, and the other
five, we've kind of always agreed that the other five should be Mrs. Edwards' separate
property.


 THE COURT: You understand that I will order all [community]
property sold, all debts paid, and whatever is left over will be divided equally?


 [Defendant's Attorney]: I've always understood that.


 [Plaintiff's Attorney]: Yes, sir.


 THE COURT: And if the parties -- Of course, they lose on that kind
of a deal, but I went to that system when I started trying to divide five tea glasses and
seven sheets.


 . . . .


 [Plaintiff's Attorney on direct examination of Shannon]: Now, Mrs. Edwards, you
have made a list - Have you made a list of the community property that you and
Mr. Edwards had acquired during the marriage?


 A. Yes. ma'am.


 [Defendant's Attorney]: Your Honor, given the Court's prior ruling,
I don't see what the necessity of going into the community property is. I understand
that the Court's order is going to be that it's to be disposed of, pending no agreement.

 

 THE COURT: That will be the order.



 . . . .


 THE COURT: You know, we invariably get into a big argument
about what someone kept or hid or didn't turn in or that type of thing, and I don't want
to face that in this case.

 

 [Defendant's Attorney]: Do you want us to submit a written
supplement [of the specific community property], Judge, if it's not in there?


 THE COURT: Yes. Because what I intend to be sold is everything
except their underwear.


 Tex. Fam. Code Ann. § 7.001 (Vernon 1998) gives the trial court broad authority to divide
the marital estate in a manner it deems just and right. That authority sometimes includes the power
to appoint a receiver. Rusk v. Rusk, 5 S.W.3d 299, 306 (Tex. App.-Houston [14th Dist.] 1999, pet.
denied). The appointment of a receiver is left to the trial court's sound discretion. Id. at 307.

 Receivership is an extraordinarily harsh remedy and one that courts are particularly loathe
to utilize. Id. at 306. "In recognition of the fact that appointment of a receiver without notice is one
of the most drastic actions known to law or equity and should be exercised with extreme caution and
only where great emergency or imperative necessity requires it, our courts have uniformly been
reluctant to grant such harsh relief." Id. (quoting Indep. Am. Sav. Ass'n v. Preston 117 Joint Venture,
753 S.W.2d 749, 750 (Tex. App.-Dallas 1988, no writ)). Judicial seizure and court management of
any asset should be a last resort. Id.

 The Texas Supreme Court has held that in making a just and right division, the trial court
should first decide whether the community estate is subject to partition in kind. Hailey v. Hailey,
160 Tex. 372, 331 S.W.2d 299, 303 (1960). In determining if property is subject to partition in kind,
the trial court should consider the nature and type of property involved and the relative conditions,
circumstances, capabilities, and experience of the parties. Walston v. Walston, 971 S.W.2d 687, 693
(Tex. App.-Waco 1998, pet. denied). If the property is subject to partition in kind, the trial court
should make an equitable division of the community estate. Id. at 692. If it is not, the trial court
may appoint a receiver and order so much of the property as is incapable of partition to be sold and
the proceeds divided between the parties in what the trial court views as a just and fair distribution. 
Id.

 In the present case, the trial court's findings are inadequate because they do not address
whether any or all of the community property is subject to partition in kind. The findings do not
even contain a list of the community assets and debts. Therefore, the trial court's findings do not
provide a factual foundation for its conclusion a receiver should be appointed.

 It appears from the record before this court the trial court's practice is to appoint a receiver
when the parties cannot reach an agreement on the division of property. Such a practice constitutes
an abuse of discretion insofar as it does not follow the principles the Texas Supreme Court set out
in Hailey, i.e., determine what can be partitioned in kind between the parties and, if necessary to
achieve a just and right division, appoint a receiver to dispose of the remainder.

 At oral argument, Alan's attorney contended the trial court's procedure was not an abuse of
discretion because the parties are offered the opportunity to purchase the property before the receiver
sells it. Counsel's assertion is unsupported in the record before this court.

 However, even if counsel is correct, the trial court's procedure puts the parties in a worse
position than they would have otherwise been had the trial court distributed their property as part of
an in-kind division. If a party chooses to purchase property from the receiver, he or she will have
to expend separate property to do so. The money earned from the sale would then be distributed in
part to the other party either in cash or as a means of paying the community debt. The effect is a
partition, with the party who purchases the property reimbursing the other party for his or her
interest.

 But each party's interest in the community estate is reduced proportionately by their share of
the receiver costs. Further, even if the parties can purchase the community property from the
receiver, the party with greater liquidity has greater flexibility in retaining property he or she might
otherwise lose as part of an in-kind division and distribution.

 Nevertheless, in the present case, the issue is moot. The record contains a partial list of the
community assets and debts (though the trial court's findings do not). The record also contains
receipts for the sale of some of the community property and distribution checks to various creditors
of the estate. The record further indicates the trial court made a final order of disbursement, though
it is not clear whether the record contains a copy of that order. At oral argument, the parties
confirmed the receiver had made a final distribution of all community assets.

 For a plaintiff to have standing, a controversy must exist between the parties at every stage
of the legal proceedings, including the appeal. Williams v. Lara, 52 S.W.3d 171, 184 (Tex. 2001). 
If a controversy ceases to exist, i.e., the issues presented are no longer "live" or the parties lack a
legally cognizable interest in the outcome, the case becomes moot. Id. If the case becomes moot,
the parties lose standing to maintain their claims. Id.

 There is an exception to the mootness doctrine for conduct that is of such short duration the
appellant cannot obtain review before the issue becomes moot. Tex. Dep't of Pub. Safety v. LaFleur,
32 S.W.3d 911, 913-14 (Tex. App.-Texarkana 2000, no pet.). This exception is referred to as
"capable of repetition, yet evading review." Id. at 914. To invoke the exception, a plaintiff must
prove: (1) the challenged action was too short in duration to be litigated fully before the action
ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be
subjected to the same action again. Williams, 52 S.W.3d at 184.

 This case is not susceptible to the application of the "capable of repetition, yet evading
review" exception to the mootness doctrine. Because the property has been sold, the proceeds
distributed, and neither party contends the division of property was unfair, there is no present
controversy, and Shannon will not be subject to the same action again. Further, Shannon could have
protected her interest by requesting a stay of the order appointing a receiver pending review on
appeal. We overrule Shannon's contentions regarding the receivership.

Protective Order

 Shannon next contends the trial court erred in failing and refusing to provide Findings of Fact
and Conclusions of Law concerning the granting of her application for a protective order. The trial
court's Findings of Fact and Conclusions of Law do not address the protective order it orally granted
at the end of trial and incorporated in the divorce decree. The trial court overruled Shannon's
Request for Additional or Amended Findings of Fact and Conclusions of Law, in which she
requested a finding of fact that Alan "engaged in at least one episode of family violence during the
marriage" and a conclusion of law that Shannon is entitled to a permanent protective order and
permanent injunction because of Alan's conduct during the marriage. 

 As mentioned previously, the trial court's findings of fact form the basis of the judgment on
all grounds of recovery. Tex. R. Civ. P. 299. On appeal, the judgment may not be supported by a
presumed finding on any ground of recovery, no element of which has been included in the findings
of fact. Id. It follows from this that there are no findings of fact in the record to support the
Protective Order, which the trial court is required to issue if it finds family violence has occurred and
is likely to occur in the future. See Tex. Fam. Code Ann. § 85.001(b) (Vernon Supp. 2002).

 Nevertheless, Shannon was not deprived of an opportunity to present her case on appeal
because she prevailed in the trial court. Alan, who is the adverse party with respect to the Protective
Order, has not appealed from its issuance. We overrule Shannon's contention regarding the
sufficiency of the Findings of Fact and Conclusions of Law on the Protective Order.

 Shannon also contends the Protective Order incorporated in the divorce decree is
unenforceable because it does not comply with the Texas Family Code. Section 85.004 of the
Family Code requires a protective order in a suit for dissolution of marriage be in a separate
document entitled "PROTECTIVE ORDER." Tex. Fam. Code Ann. § 85.004 (Vernon Supp. 2002). 
Shannon does not cite any authority for her theory that incorporating the Protective Order in the
divorce decree renders it unenforceable, and our research reveals no such authority either in caselaw
or in the Texas Family Code. Such a harsh outcome is inconsistent with the Legislature's intent of
preventing family violence. Nevertheless, the trial court clearly intended to grant Shannon a
protective order. We therefore sustain her contention regarding the necessity for a protective order
issued in conformance with Section 85.004.

Conservatorship

 Shannon next contends the trial court erred in failing and refusing to provide findings of fact
concerning the conservatorship of the children. She also contends the trial court abused its discretion
in naming Alan as sole managing conservator of the children. Specifically, she contends that the trial
court failed to give sufficient weight to evidence of Alan's violence against Shannon, that the trial
court in effect granted custody to Alan's parents, and that there is insufficient evidence to support
the trial court's conclusion of law that states naming Alan as sole managing conservator is in the best
interests of the children.

 The best interest of the child is the primary consideration in determining conservatorship and
possession of and access to the child. Tex. Fam. Code Ann. § 153.002 (Vernon 1996). A trial court
has wide discretion in determining the best interest of a child in family law matters such as custody,
visitation, and possession. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). We reverse the
trial court's judgment only when it appears from the record as a whole the trial court abused its
discretion. Id.

 In determining whether to appoint a party as a sole or joint managing conservator, a trial
court must consider evidence of the intentional use of abusive physical force by the party against the
party's spouse, a parent of the child, or any person younger than eighteen years of age committed
within the two years preceding the filing of or during the pendency of the suit for divorce. Tex.
Fam. Code Ann. § 153.004(a) (Vernon Supp. 2002). The trial court may not appoint joint managing
conservators if credible evidence is presented of a history or pattern of past or present child neglect,
or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child. Tex.
Fam. Code Ann. § 153.004(b) (Vernon Supp. 2002).

 The Texas Family Code establishes a rebuttable presumption that the appointment of a parent
as the sole managing conservator of a child, or as the conservator who has the exclusive right to
determine the primary residence of a child, is not in the best interest of the child if credible evidence
is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that
parent directed against the other parent, a spouse, or a child. Id. In addition, the Family Code
establishes a rebuttable presumption that the appointment of the parents as joint managing
conservators is in the best interest of the child, but a finding of a history of family violence involving
the parents removes the presumption. Tex. Fam. Code Ann. § 153.131(b) (Vernon Supp. 2002). 

 In the present case, one of the trial court's conclusions of law states that appointing Alan as
sole managing conservator and Shannon as possessory conservator is in the best interests of the
children. As mentioned previously, the trial court need only enter findings of fact, or additional
findings of fact, on ultimate or controlling issues, rather than on mere evidentiary issues. An
ultimate fact issue is one that is essential to the cause of action and seeks a fact that would have a
direct effect on the judgment. Winograd, 695 S.W.2d at 639. In contrast, an evidentiary issue is one
the trial court may consider in deciding the controlling issue, but is not a controlling issue itself. See
id.

 Here the trial court's findings of fact do not contain any facts on which the ultimate issue of
the best interests of the children could be predicated. Therefore, the trial court erred. Such error is
harmful if it prevents an appellant from properly presenting a case on appeal. Tenery, 932 S.W.2d
at 30. Harm occurs when the testimonies of two witnesses were in conflict on material issues of fact
and would support different conclusions of law. See Stanfield, 373 S.W.2d at 366.

 The testimony is conflicting on the issue of domestic abuse. Shannon testified Alan was
"physically violent" with her in front of the children at times before their separation, but did not
elaborate on the specifics of those incidents. She did testify about the specifics of an incident that
occurred at the time of her separation from Alan. She testified she was attempting to leave with
Brittany in her arms when Alan and his sister took Brittany from her. She testified she was "hit by
someone," but did not know who hit her. She also testified Alan bit her on her hand so she would
release Brittany. She admitted, however, she never called the police or filed a police report regarding
any of these alleged domestic violence incidents. 

 Alan denied ever physically abusing Shannon, either during their marriage or when they
separated. Alan's mother, Jewell Edwards, who was also present during the alleged incident when
Shannon and Alan separated, testified she did not see anyone hit Shannon. Rather, she testified
Shannon hit Alan and threw rocks at him. 

 This issue is material to the appeal because if the trial court believed Shannon that Alan
engaged in a history or pattern of physical abuse against her during their marriage, there would need
to be other evidence, and other findings, rebutting the Family Code's presumption that appointing
someone who engaged in a history or pattern of physical abuse as sole managing conservator is not
in the best interests of the children.

 Shannon also contends the trial court's conclusion of law - that appointing Alan as sole
managing conservator and Shannon as possessory conservator is in the best interests of the children
- is not supported by the evidence. We review a trial court's conclusions of law de novo as questions
of law, examining the legal conclusions drawn from the facts to determine their correctness. Circle
C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist., 981 S.W.2d 483, 485 (Tex. App.-Austin
1998, no pet.). Because there are no findings of fact, we are in no position to evaluate the trial
court's legal conclusions without presuming facts in support of the judgment, which Rule 299
prohibits. See Tex. R. Civ. P. 299. We sustain Shannon's issue regarding the trial court's findings
on the conservatorship of the children.

 Shannon also contends the trial court awarded de facto custody to Alan's parents. As
mentioned previously, in its third conclusion of law, the trial court stated that appointing Alan as sole
managing conservator and Shannon as possessory conservator is in the best interests of the children. 
The judgment is consistent with that conclusion.

 As for Shannon's contention the trial court awarded de facto custody to Alan's parents, the
record is clear that, no matter which parent was awarded custody, the grandparents would play a
large role in caring for the children. A trial court does not err in considering the role grandparents
or other family members will play in a child's life in determining the best interest of the child. See,
e.g., Johnson v. Johnson, 536 S.W.2d 620, 621 (Tex. Civ. App.-Tyler 1976, no writ) (appointing
father managing conservator was not an abuse of discretion where grandparents lived in the same
town as father and grandchildren, had a good relationship with grandchildren, and were readily
available as babysitters). We overrule Shannon's contention.

Health Insurance

 Shannon next contends the trial court's fourth conclusion of law - that Shannon is ordered
to purchase and maintain health insurance for the children - is contrary to the trial court's oral
pronouncement at the end of trial and the written divorce decree. At the end of trial, the trial court
stated, "I'm going to require that Mrs. Edwards pay child support based on the chart, but I'm also
going to require that [Alan] continue to pay the insurance and dental insurance on these kids." The
divorce decree recites, "IT IS THEREFORE ORDERED that, ALAN RANDALL EDWARDS shall
provide medical support for the parties' children, for as long as child support is payable under the
terms of this order, as set out herein." The divorce decree goes on to specify the terms by which
Alan is to provide medical insurance. Yet, in its conclusions of law, the trial court recites,
"[Shannon] is to pay child support in the amount of $50.00 per week, and to purchase and maintain
health insurance on the minor children."

 Findings of fact and conclusions of law filed after a judgment are controlling if there is any
conflict between them. City of Laredo v. R. Vela Exxon, Inc., 966 S.W.2d 673, 678 (Tex.
App.-San Antonio 1998, pet. denied). When an appellate court is presented with a conflict between
a judgment and subsequent findings and conclusions, the appellate court has the power to modify
the judgment to conform with the findings of fact and conclusions of law. Id. However, if there is
no evidence in the record to support the subsequent finding, we are not required to modify the
judgment to reflect that finding. Id.

 We are not confronted here with a finding of fact inconsistent with the judgment; rather, we
are confronted by a conclusion of law inconsistent with the judgment. In most of the cases we could
find in which the judgment was inconsistent with the findings of fact and conclusions of law, it was
the findings of fact, rather than the conclusions of law, that were inconsistent with the judgment. 
See, e.g., id.; Cole v. Cole, 880 S.W.2d 477, 483 (Tex. App.-Fort Worth 1994, no writ); Arena v.
Arena, 822 S.W.2d 645, 652 (Tex. App.-Fort Worth 1991, no writ); Law v. Law, 517 S.W.2d 379,
383 (Tex. Civ. App.-Austin 1974, writ dism'd). In those cases in which a conclusion of law was
inconsistent with the judgment, the court of appeals disregarded the conclusion of law. See Kershner
v. State Bar of Tex., 879 S.W.2d 343, 348 (Tex. App.-Houston [14th Dist.] 1994, writ denied);
Mercedes Dusting Serv., Inc. v. Evans, 353 S.W.2d 894, 896 (Tex. Civ. App.-San Antonio 1962,
no writ).

 This result follows logically from Rule 299, which makes findings of fact the basis of the
judgment on all grounds of recovery or defense. See Tex. R. Civ. P. 299. The principle function of
conclusions of law is to indicate to the appellate court the theory on which the case was tried. 6 Roy
W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 18:3[a] (2d ed. 1998). 
We overrule Shannon's contention.

Separate Property

 Shannon next contends the trial court's fifth and sixth conclusions of law do not accurately
reflect the classification and division of separate property stated in the judgment. This issue is
improperly briefed. Tex. R. App. P. 38.1(h). Shannon has not pointed out the purported inaccuracy,
and we observe that the classification of property in the conclusions of law is substantially the same
as those in the judgment. In any event, as we have already said, when there is a conflict between
conclusions of law and the judgment, the judgment controls. We overrule Shannon's contention.


Motion for New Trial

 Shannon next contends the trial court erred in overruling her Motion for New Trial. In her
motion, Shannon contended that Alan denied her the visitation to which she was entitled under the
standard custody order, that events surrounding the couple's son, Casey, demonstrated Alan should
not have been named as sole managing conservator, and that events after the final divorce hearing
demonstrated Alan's parents had de facto custody of the children.

 At the hearing on the Motion for New Trial, Alan admitted he had frequently failed to make
the children available for Shannon's visitation. He acknowledged the Protective Order prevented
him from restricting her access to the children. He testified he kept the children away from Shannon
in part because she moved over 100 miles away to Sherman, Texas, and began living with a man he
did not believe was of good character. However, both Shannon's attorney and Alan acknowledged
the couple had agreed Shannon could have possession of the children on weekends. 

 Shannon also introduced pictures of Casey's leg, which purportedly had a bruise on it, and
asked Alan whether he caused the bruise with a belt. Alan denied causing the bruise. 

 There was also testimony Casey had been having difficulty adjusting to the divorce. Shannon
introduced Casey's grades, which showed a precipitous drop around the time of the final divorce
hearing. His grades had risen in the periods after the final divorce hearing, but in some cases were
lower than they were before the final divorce hearing. 

 Alan, Jewell Edwards, Shannon, and Shannon's mother all testified Casey began twisting his
hair and pulling it out. However, Shannon and her mother also testified the situation had gotten
better. Alan admitted he told Shannon that Casey had hit another boy with a baseball bat at a Little
League game. Alan later testified he had been misinformed and the incident was not as serious as
he first believed. Alan also testified he initiated counseling for Casey, but later withdrew him
because the counselor was not meeting with Casey for the full scheduled hour. 

 Regarding Alan's parents' involvement in the children's lives, Jewell Edwards testified she
and her husband helped Alan by feeding the children and getting them to school. She also testified
she and her husband took the children on extended trips during their summer vacation from school. 

 In opposition to Shannon's motion, Alan testified Shannon quit her job at Wal-Mart almost
immediately after the final divorce hearing. He testified she did not begin making court-ordered
child support payments until about nine months later. 

 Shannon testified she moved to Sherman shortly after the final divorce hearing and began
living with a man there. She testified they are engaged to be married as soon as her divorce is final. 
She also testified she and her fiancé plan to move back to Texarkana, where he had recently been
transferred. 

 The trial court has wide discretion in ruling on a motion for new trial, and its action will not
be disturbed on appeal absent a showing of an abuse of discretion. McGuire v. Kelley, 41 S.W.3d
679, 683 (Tex. App.-Texarkana 2001, no pet.). There was evidence Alan prevented Shannon from
exercising her court-ordered visitation. However, there was also evidence the couple had recently
agreed to allow Shannon to have the children on weekends, rather than every other weekend as the
standard custody agreement provides. Similarly, with regard to Casey's behavior, the evidence
shows he had adjustment problems (e.g., lower grades, pulling his hair out), but the trial court could
have rationally concluded based on the evidence the situation was stabilizing.

 There was also evidence Casey sustained a bruise on his leg. However, as trier of fact, it is
the province of the trial court to determine the credibility of the witnesses and the weight to be given
their testimony, to believe or disbelieve all or any part of the testimony, and to resolve any
inconsistencies in the testimony. Lifshutz, 61 S.W.3d at 515. Therefore, the trial court was free to
believe Alan's testimony that he did not cause the bruise on Casey's leg. The trial court could also
have rationally concluded Alan's parents were playing no greater role in the children's lives than the
trial court envisioned when it named Alan as sole managing conservator.

 In addition, there was evidence Shannon moved away from the children almost immediately
after the final divorce hearing to live with another man. There was also evidence Shannon failed to
timely make her court-ordered child support payments. Under these facts, there was no abuse of
discretion. We overrule Shannon's contention regarding the Motion for New Trial.

Conclusion

 We sever the portion of the divorce decree regarding conservatorship, abate this severed
portion, and remand to the trial court for additional findings of fact on the issue of the best interests
of the children in accordance with this opinion. The trial court is ordered to enter its additional
findings and forward a supplemental clerk's record containing those findings to this court within
thirty days of the date of this opinion. Shannon may file an amended brief related to issues one, two,
three, and five of her brief within twenty days of the date the trial court files its additional findings
of fact. Alan may file a responsive brief within ten days of the last day on which Shannon may file
her amended brief.

 We also sever the portion of the divorce decree regarding the Protective Order, the judgment
as to that issue is reversed, and the cause is remanded to the trial court for issuance of a protective
order in conformance with Section 85.004 of the Texas Family Code.

 We overrule the remainder of Shannon's issues on appeal and affirm the trial court's judgment
with respect to those issues only.



 Ben Z. Grant

 Justice


Date Submitted: March 12, 2002

Date Decided: April 11, 2002


Publish